CITY OF ATLANTA v. CHATTANOOGA FOUNDRY & PIPEWORKS et al.

(Circuit Court of Appeals, Sixth Circuit. December 8, 1903.)

No. 1,178.

**1. Monopolies—Anti-Trust Act—Action by City for Injury to Business.**

A municipal corporation engaged in operating water, lighting, or similar plants, from which a revenue is derived, is, in relation to such matters, a business corporation, and may maintain an action under section 7 of the anti-trust act of July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202], for injury to its "business" by reason of a combination or conspiracy in restraint of interstate trade or commerce made unlawful by such act.

**2. Same—Liability of Members of Combination.**

Every member of an illegal combination in restraint of interstate trade or commerce in violation of the anti-trust act is liable for the damages resulting to the business or property of a plaintiff by reason of such combination, and it is immaterial that there were no direct contract relations between plaintiff and defendant.

**3. Same—Injury to Business.**

If the effect of an illegal combination between manufacturers to prevent competition in the sale of a commodity which is a subject of interstate commerce be to enhance the price of such commodity to a purchaser, he is entitled to recover the difference between the price paid and the reasonable price under natural competitive conditions, as an injury to his business, whether such business is interstate or not, provided the transaction by which the purchase was made was interstate.

**4. Same—Action for Damages—Limitation.**

An action under section 7 of the anti-trust law (Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]), providing that "any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act may sue therefor in any Circuit Court of the United States * * * and shall recover three-fold the damages by him sustained," is not an action for a penalty or forfeiture, within Rev. St. § 1047 [U. S. Comp. St. 1901, p. 727], prescribing a limitation of five years for a "suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States," but one for the enforcement of a civil remedy given by statute for a private injury, compensatory in its purpose and effect; the recovery permitted in excess of actual damages being in the nature of exemplary damages, which does not change the nature of the action, and such action is governed as to limitation by the statutes of the state in which it is brought.

5. SAME—TENNESSEE STATUTE.

An action under said section based on an alleged excessive price plaintiff was compelled to pay for a manufactured article by reason of a combination between defendants and others to prevent competition and enhance the price of such article in violation of the act is not one for an injury to personal property, within Shannon's Code Tenn. § 4470, which prescribes a limitation of three years for "actions for injuries to personal or real property," but is one to enforce a statute liability, and within section 4473, which prescribes a limitation of ten years for certain actions, and in "all other cases not expressly provided for."

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

See 101 Fed. 900.

This was an action to recover damages under the seventh section of the act of Congress of July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202], known as the "Anti-Trust Act." The plaintiff is a municipal corporation of the state of Georgia. The defendants are two manufacturing corporations of the state of Tennessee, engaged in the business of making and selling cast-iron pipe and fittings.

The declaration averred that on or about the 28th of December, 1894, the said two companies entered into an unlawful combination for the purpose of restraining interstate trade and commerce with four other corporations engaged in the same line of manufacture, to wit, the Anniston Pipe & Foundry Company, and the Howard-Harrison Iron Company, both corporations of the state of Alabama, and conducting business in that state; the Dennis, Long & Co., a corporation of the state of Kentucky, and carrying on its business in said state; and the Addyston Pipe & Steel Company, a corporation of the state of Ohio, engaged in business at Cincinnati, in that state. The illegal trust agreement complained of is the identical trust which was dissolved by decree of this court in the case reported as The United States v. The Addyston Pipe & Steel Co., 85 Fed. 271, 29 C. C. A. 141, 46 L. R. A. 122, and affirmed by the Supreme Court in Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136. Reference may be made to the opinions in those cases for the nature and methods of the trust out of which has arisen the present action.

The declaration, in substance, charges that the plaintiff was engaged in conducting a system of waterworks, and that it derived a large revenue from the sale of water to private consumers, the income going into the city treasury; that, for the purposes and uses of its said waterworks business, it bought during the operations of said unlawful trust a large supply of iron water pipe, and that the contract for its supply of such pipe was given to the Anniston Pipe & Foundry Company as the lowest bidder. It is then averred that, by reason of the said unlawful agreement between the said producers of said pipe, all competition was suppressed, and that the said Anniston Company obtained the contract through an arrangement by which it was to be allowed to obtain same at a price agreed upon between said conspirators, without any competition, and that for this privilege it agreed to pay and did pay to the said association a large sum, called a "bonus," which was to be divided between the parties to said arrangement in agreed proportions. It is, in effect, charged that the "bonus" constituted the difference between the fair and reasonable value of the pipe so bought by plaintiff, and the price which it was compelled to pay, and that this large and unreasonable price was extorted from plaintiff through the unlawful suppression of competition, and by the instrumentality of fictitious bids put in by the other parties to said association, so arranged as to create the semblance of competition, and yet secure the contract for the Anniston Company at the price set by the combination as the ostensible lowest bidder. The plaintiff avers that, by reason of the formation of said illegal combination, interstate commerce in cast-iron pipe was restrained, and plaintiff compelled to deal only with the said Anniston Company, and to pay a price agreed upon by the members of the combination, which was unreasonable; that the bonus so paid out of the price

paid by plaintiff was paid into a common pocket, and divided among the conspirators in an agreed way; and that the two Tennessee corporations here sued received their due proportion of said bonus according to the terms and plans of the scheme. By all of which the plaintiff avers that it was compelled to pay for the cast-iron pipe so bought and used in its said waterworks $15,000 more than would have been paid but for the said unlawful trust between the producers of such pipe, and it lays the damage to its business and property at triple the said excess price so paid and reasonable attorneys' fees.

The defendants plead the general issue of not guilty, and the Tennessee statutes of limitations of one and three years.

Upon the conclusion of all of the evidence, the court instructed the jury to find for the defendants. This has been assigned as error, and this writ sued out by the plaintiff below.

George Westmoreland and C. P. Goree, for plaintiff in error.

Frank Spurlock, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The plaintiff's action is to recover damages incurred in its "business or property" by reason of a combination forbidden by the act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], known as the "Anti-Trust Act," and its right to a recovery depends wholly upon the seventh section of that law.

It is true that plaintiff is a municipal corporation. Nevertheless it was maintaining a system of waterworks, and furnished water to consumers, charging for same precisely as would a private corporation engaged in a like business. That a municipal corporation may be empowered to engage in the business of furnishing water or gas, or in the operation of street railways, as well as many other quasi public occupations, must be conceded. That the profit resulting inures to the public does not alter the fact that when thus engaged it is pro hac vice a business corporation. If its "business" as a corporation engaged in the occupation of supplying water for a consideration has been injured by the unlawful combination complained of, it is just as much entitled to maintain this suit as a private corporation engaged in a like occupation. That it was not engaged in an interstate water business is true. But if it has no standing to recover damages for an injury to its "business," it is not easy to see how it has any better standing to recover for an injury to its "property." That there was evidence tending to show that the plaintiff had been compelled to pay an unreasonable price for the pipe which it bought during the continuance of the unlawful combination complained of is not to be disputed. That its purchases were made exclusively from the Anniston Pipe Company, a corporation doing business in Alabama, and that it is not suing that corporation, is of no vital significance. The Alabama company and the two Tennessee companies which are sued were members of an association which included practically every pipe manufacturing concern in a situation to compete for the business of the plaintiff. The evidence also tended to show that the object of the combination was to prevent any other producer of such pipe from competing with the Anniston Company for plaintiff's business, and that practices were adopted intended to compel

it to deal exclusively with the Alabama member of the association,. and to pay a price settled by the combination in advance of any bidding. For this privilege the Alabama corporation agreed to pay a large sum into the pool treasury, called a "bonus," which was to be divided among the confederates in agreed proportions. An appearance of competition was to be maintained by bids put in by the other associates, every such bid being higher than the bid to be made by the company to whom the contract had been assigned. There was to be no chance for any other person to secure a contract with the plaintiff than that member of the combine selected in advance of the open biddings.

Mr. Justice Peckham, in Addyston Pipe Co. v. United States, 175 U. S. 211, 243, 20 Sup. Ct. 96, 108, 44 L. Ed. 136, where this very combination was under consideration, speaking for the court of the results of the agreement between the corporations who were members of this trust, said:

"The combination thus had a direct, immediate, and intended relation to, and effect upon, the subsequent contract to sell and deliver the pipe. It was to obtain that particular and specific result that the combination was formed, and but for the restriction the resulting high prices for the pipe would not have been obtained. It is useless for the defendants to say that they did not intend to regulate or affect interstate commerce. They intended to make the very combination and agreement which they in fact did make, and they must be held to have intended (if in such case intention is of the least importance) the necessary and direct result of their agreement."

Undoubtedly it was not competent for the Congress to regulate by legislation commerce which is purely intrastate, and this limitation was recognized in Addyston Pipe Co. v. United States, where the court said:

"In regard to such of these defendants as might reside and carry on business in the same state where the pipe provided for in any particular contract was to be delivered, the sale, transportation, and delivery of the pipe by them under that contract would be a transaction wholly within the state, and the statute would not be applicable to them in that case. They might make any combination they chose with reference to the proposed contract, although it should happen that some nonresident of the state eventually obtained it."

The direct intention and effect of the combiniation was to limit and restrict the right of each of the several companies to compete for business with Atlanta, as well as to enhance the price of the commodity which was the subject of the agreement.

We have, then, a direct action by this plaintiff against two of the members of this unlawful combine. That there was no purchase made direct from either of them is of no importance. Their guilt is as great as that of the Alabama corporation from whom the plaintiff did buy its pipe. If the agreement between the defendants and their associates was unlawful and tortious, each is responsible for the torts committed in the course of the illegal combination. These defendants have themselves participated in the benefits resulting from the bonus paid by the Alabama member of the association, and have no ground to complain that they have been alone sued. Stockwell v. U. S., 13 Wall. 531, 20 L. Ed. 491; Van Horn v. Van Horn, 52 N. J. Law, 286, 20 Atl. 485, 10 L. R. A. 184; Robertson v. Parks, 76 Md. 118, 135, 24 Atl. 411.

Replying to the argument that if the combination did not prevent any particular contract that it had not restrained trade, Justice Peckham, in Addyston Pipe Co. v. United States, 175 U. S. 245, 20 Sup. Ct. 109, 44 L. Ed. 136, said:

"It is not material that the combination did not prevent the letting of any particular contract. Such was not its purpose. On the contrary, the more contracts to be let, the better for the combination. It was formed, not for the object of preventing the letting of contracts, but to restrain the parties to it from competing for contracts, and thereby to enhance the prices to be obtained for the pipe dealt in by those parties. * * * The question is as to the effect of such combination upon the trade in the article; and if that effect be to destroy competition, and thus advance the price, the combination is one in restraint of trade."

If, then, the price of a commodity which is the subject of an interstate contract be unlawfully enhanced by a combination for the purpose of suppressing competition, shall the vendee thus compelled to pay this unlawfully enhanced price be without remedy against the combination because he may happen not to be engaged in the conduct of an interstate business? If the effect of a combination to enhance the price of a commodity which is the subject of interstate commerce be to restrain such commerce, within the meaning of the law of Congress, by reason of its tendency to affect the volume of such trade, then the effect upon the business of one who has paid the enhanced price, in an interstate transaction, must be to correspondingly affect the volume or profit of that business. The difference between what he was thus compelled to pay and the reasonable price of the commodity under natural competitive conditions would be an injury to that business directly resulting from such unlawful combination. The injury to his business, whether it be in its volume or profit, is the same whether that business be inter or intra state—whether he buy to extend his plant, or to sell again in an interstate business. This excessive price is the expected and intended result of the unlawful combination to restrain interstate trade in that commodity. That such a plaintiff is entitled to recover the damages thus sustained in his business, whatever its character, would seem to be the plain purpose of the seventh section of the law of Congress, under the logic of the decision in Addyston Pipe Co. v. United States. It is possible to so construe this seventh section as to devitalize this section by confining compensatory relief to such persons as shall sustain an injury in some interstate business whose volume or profit has been diminished. But this construction does not seem consistent with the wide economic purposes of Congress, as manifested by the whole tenor of the act. Congress evidently foresaw the wholesome effect of pecuniary responsibility for injuries resulting from such forbidden combinations and the courts should not devitalize the remedy by strained interpretations calculated to encourage disregard of the law. The act gives the remedy to "any person" "injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act." If Congress had the power to declare unlawful a combination which was intended to restrain interstate commerce by enhancing the value of a commodity when the subject of interstate commerce, it had the power to give a

compensatory remedy to any person directly affected by the unlawful agreement.

We see no application of the case of Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, to the case at bar. Undoubtedly the contract of purchase and sale of pipe was a contract wholly collateral to the unlawful trust agreement between the makers of such pipe, and the vendor could make out a case for the purchase price without reliance upon the unlawful agreement between such makers. The contract of bargain and sale between the Anniston Pipe Company and the plaintiff was therefore a valid and enforceable agreement, and the plaintiff could not defend a suit for the price by showing that the seller was a partner in an illegal association. The court in that case did decide that the damages recoverable under the seventh section were recoverable only in a direct action, and could not be set off in a suit under a contract for the price. But this was based, not upon any construction of that section, but upon the general principle of law which forbids the setting off of unliquidated damages not directly growing out of the principal transaction. The present suit is a direct action, and is therefore unaffected by anything decided in that case.

This brings us to the question of the limitation applicable to the suit. Under the evidence, it was very plain that plaintiff's right of action accrued more than three and less than five years before action commenced. The anti-trust act provides no limitation, and, if any has been prescribed by federal law, it is that found in section 1047, Rev. St. [U. S. Comp. St. 1901, p. 727], which provides that "no suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States," shall be maintained unless commenced within five years from accrual of penalty or forfeiture. If this is an action to recover a penalty, within the meaning of this statute, the suit was in time. The shorter statute of the state, limiting the time for the commencement of suits for statuory penalties to one year, would have no application to a suit for a penalty under an act of Congress. It is only when there is no federal statute that the limitation prescribed by the law of the state is applicable. Campbell v. Haverhill, 155 U. S. 610, 614, 15 Sup. Ct. 217, 39 L. Ed. 280; Brady v. Daly, 175 U. S. 148, 20 Sup. Ct. 62, 44 L. Ed. 109.

We find ourselves in agreement with the court below in holding that an action under the seventh section of the act of July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202], is not a penal action. The three first sections of the act are undoubtedly penal. They forbid certain contracts and combinations, and provide that persons doing any of the forbidden things shall be guilty of a misdemeanor, and subject to punishment by both fine and imprisonment. The fourth and fifth sections give jurisdiction to the Circuit Courts to prevent and restrain violations of the act, and deal with procedure under the restraining power thus granted. The sixth section provides for the forfeiture to the United States of property in course of transportation owned by any such unlawful combination, etc. The seventh section alone gives any remedy to one injured by such a

forbidden combination or contract, and that measures the relief by the "damages by him sustained," costs of suit, and his reasonable attorney's fees. The remedy is not given to the public, for no one may bring the action save the person "who shall be injured," etc., and the recovery is for the sole benefit of the person so injured and suing. It is not reasonable to construe the remedy so conferred as a penal action, for that would be to add to the punishment by fine or imprisonment imposed by the other sections of the act an additional punishment by way of pecuniary penalty. The plain intent is to compensate the person injured. True, the compensation is to be three times the damage sustained. But this enlargement of compensation is not enough to constitute the action a penal action, within the meaning of section 1047, Rev. St. [U. S. Comp. St. 1901, p. 727]. Thus in Goodridge v. Rogers, 22 Pick. 495, and Adams v. Palmer, 6 Gray, 338, the action was for a tort for entering upon land and committing trespass, and was brought under a statute which gave to the plaintiff threefold damages. It was nevertheless held not to be an action for a statute penalty, so as to bring it under a statute which barred all actions and suits for penalties and forfeitures within one year. In suits for the infringement of patents, judgment for threefold the actual damages may be rendered, but suits under the statute have never been regarded as penal actions. Campbell v. Haverhill, 155 U. S. 610, 15 Sup. Ct. 217, 39 L. Ed. 280. In Woodward v. Alston, 12 Heisk. 581, an action against a clerk for fees illegally collected was held not to be a penal action, although called a "penalty" in the statute giving the particular remedy. In Brady v. Daly, 175 U. S. 148, 20 Sup. Ct. 62, 44 L. Ed. 109, the suit was under section 4966, Rev. St. [U. S. Comp. St. 1901, p. 3415], providing that one publicly presenting a copyrighted dramatic performance, without the owner's consent, shall be liable for all damages, "to be assessed at such sum, not less than one hundred and fifty dollars for the first, and fifty dollars for every subsequent performance as to the court may seem just." The suit was held not to be a suit for the recovery of a penalty or forfeiture.

The whole subject of penal and compensatory actions has been so thoroughly considered in Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123, and Brady v. Daly, 175 U. S. 148, 20 Sup. Ct. 62, 44 L. Ed. 109, as well as by the very full and able opinion of Judge Clark in the court below in disposing of a demurrer to a plea, that we feel we can add nothing to the subject.

The limitation applied by the court below was that prescribed by section 4470, Shannon's Revision, Tenn. Code. Prior to the Tennessee Code of 1858 the statute of limitations operated upon the remedy, and applied to the form of action. By the Code then adopted, and its amendments, the limitation now applies to the cause of action. Kirkman v. Philips' Heirs, 7 Heisk. 222; Callaway v. McMillian, 11 Heisk. 557. The limitations of actions other than real are found in sections 4466 to 4483 inclusive, Shannon's Code. Section 4466 provides that:

"All civil actions, other than those for causes embraced in the foregoing article, shall be commenced after the cause of action has accrued, within the periods prescribed in this chapter, unless otherwise expressly provided."

Section 4469, among other things, prescribes that actions for "statute penalties" shall be brought within one year.

Sections 4470, 4472, and 4473 must come under consideration, and are here below set out in full:

"Sec. 4470. Actions for injuries to personal or real property; actions for the detention or conversion of personal property within three years from the accruing of the cause of action."

"Sec. 4472. Actions for the use and occupation of land and for rent; actions against the sureties of guardians, executors and administrators, sheriffs, clerks and other public officers, for nonfeasance, misfeasance and malfeasance in office; actions on contracts not otherwise expressly provided for, within six years after the cause of action accrued.

"Sec. 4473. Actions against guardians, executors, administrators, sheriffs, clerks, and other public officers on their bonds, actions on judgments and decrees of courts of record of this or any other state or government, and all other cases not expressly provided for, within ten years after the cause of action accrued."

The learned trial judge held this action to be one for an injury to property, within the meaning of section 4470, and therefore barred in three years. To this we cannot assent. That section plainly applies only to causes of action arising out of some injury to property, as distinguished from its detention or conversion. Property, either personal or real, may be injured or damaged without its being either detained or converted. But whether the cause of action be an injury or damage to the property, or for its taking or detention, the suit must be brought within the same period. This distinction between the two kinds of injury to tangible personal property is of very ancient origin. Sir William Blackstone (volume 3, 145, 153), in his chapter entitled "Of Injuries to Personal Property," says:

"The rights of personal property in possession are liable to two species of injuries—the amotion or deprivation of that possession, and the abuse or damage of the chattels, while the possession continues in the legal owner. The former, or deprivation of possession, is also divisible into two branches —the unjust and unlawful taking them away, and the unjust detaining them, though the original taking might be lawful."

Touching injuries to property, as distinguished from its taking or detention, the same author says:

"As to the damage that may be offered to things personal while in the possession of the owner, as hunting a man's deer, shooting his dogs, poisoning his cattle, or in any wise taking from the value of any of his chattels, or making them in a worse condition than before, these are injuries too obvious to need explanation. I have only, therefore, to mention the remedies given by the law to redress them, which are in two shapes: By action of trespass vi et armis, where the act is in itself immediately injurious to another's property, and therefore necessarily accompanied with some degree of force; and by special action on the case, where the act is in itself indifferent, and the injury only consequential, and therefore arising without any breach of the peace. In both of which suits the plaintiff shall recover damages in proportion to the injury which he proves that his property has sustained. And it is not material whether the damage be done by the defendant himself, or his servants by his direction, for the action will lie against the master as well as the servant. And if a man keeps a dog or other brute animal used to do mischief, as by worrying sheep or the like, the owner must answer for the consequences, if he knows of such evil habit."

We find in the very carefully selected verbiage of section 4470 a recognition of the two kinds of injury to which tangible property is

susceptible—one by a damage which does not affect the possession, and the other by a taking or detention which does.

While the precise question has not been decided by the Supreme Court of Tennessee, we do find an indisposition to give to the section any such broad and indeterminate meaning as would include a suit which does not involve any actual injury to property. Thus this section was held not to apply to a suit against an attorney for the negligent loss of a debt intrusted to him for collection. Bruce v. Baxter, 7 Lea, 477; Ramsey v. Temple, 3 Lea, 253. Nor to the suit of a stockholder, in behalf of the corporation, against bank directors, for the negligent discharge of their duties, by which the corporation had sustained losses. Wallace v. Lincoln Savings Bank, 89 Tenn. 631, 15 S. W. 448, 24 Am. St. Rep. 625.

In Kirkman v. Philips' Heirs, 7 Heisk. 222, 225, the court said: "The statute of limitations applicable depends upon the nature and character of the action, and not upon its form." In the same case it was held that, although the forms of action have been abolished by the Code, an owner of personal property, whose right to sue for damages for its conversion was barred by the statute of three years, might waive the tort, and sue for the value upon the implied assumpsit, in which case his suit would not be barred in six years; that being the time within which a suit upon a contract might be brought. · See, also, Alsbrook v. Hathaway, 3 Sneed, 454. Actions on statute liabilities, not being a statute penalty, and not dependent upon any contract, express or implied, are actions not otherwise "expressly provided for by any of the other sections of the chapter upon the limitations of actions other than real." Such an action is at the common law—one in the nature of an action upon a specialty—and is of a similar kind to those enumerated in section 4473, Shannon's Code. Under the statute of 21 James I, c. 16, all actions "upon the case," with certain exceptions, and "all actions of debt grounded upon any lending or contract without specialty," were barred unless commenced within the time named in the statute. But an action of debt which was grounded upon a specialty was not within the statute. Specialties were not within the evil intended. Angell on Limitations, § 80; Jones v. Pope, 1 Saunders, 38; White v. Parkin, 12 East, 578; Browne on Actions at Law, 345; Bullard v. Bell, 1 Mason, 243, Fed. Cas. No. 2,121; 4 Bacon, Abridgment, 471. But the statute of James operated upon the form of action. Thus all actions "upon the case," whatever the cause of action, were within the bar of the statute, and so were "all actions of debt grounded upon any lending or contract without specialty."

In Carrol v. Green, 92 U. S. 509, 23 L. Ed. 738, it was held that a suit by creditors of a corporation to enforce their claims against stockholders under a clause of the charter rendering them individually liable was barred by the South Carolina statute; being, in substance, the act of 21 James I, c. 16. The reason given for this result was that the charter was a mere offer or proposal by the state, which the stockholders could accept or reject, and that by taking stock they assented to the liability imposed, and that the assent thus given and promise implied was the ground of liability, and that the action of case would lie upon such an implied promise, which action was within

the bar of the statute. The court, however, went further, and held that the action or suit was not on the statute, and was therefore not an action on a specialty. "The statute," said the court, "was only inducement. The implied promise of the stockholders to fulfill its requirements was the agreement on their part, and it was without specialty." The distinctions made in the case are quite refined, and turn upon common-law forms of action. So far as the case goes upon the ground that the charter involved a mere proposal, and that the liability of the shareholder was grounded upon his implied agreement, it is in accord with the great current of authority.

The statute of James, as amended by Act N. C. 1715, c. 21, was in force in Tennessee until adoption of the Tennessee Code of 1858. Act N. C. 1715, c. 31, Scott's Revisal, vol. 1; Pea v. Waggoner, 5 Hayw. 19; Tisdale v. Munroe, 3 Yerg. 320. By the Code, the statutes no longer operate upon the form, but upon the cause, of action; and, by section 4473, every cause of action not otherwise expressly provided for is barred, without regard to whether it be upon a specialty or not.

It is impossible, having any regard to the verity of things, to conceive how any action would lie, under the seventh section of the anti-trust act, upon any implied agreement of the defendants to compensate the plaintiff for the injury to its business and property. But if we could torture an implied agreement out of the transaction, the defendants would not be in better plight, for, if the cause of action be a contract, express or implied, the action would not be barred for six years. Shannon's Code, § 4472. We are, however, of opinion that this is an action on a statute liability, and that the cause of action does not arise out of any agreement, and that such an action is not barred for ten years.

The third and fourth pleas were bad, and the demurrer to them should have been sustained. The direction to find a verdict for the defendants was also error.

The judgment will be reversed, with directions to grant a new trial.