## KENTUCKY–TENNESSEE LIGHT & POWER CO. v. NASHVILLE COAL CO. et al.

No. 151.

District Court, W. D. Kentucky.

March 13, 1941.

Lynne A. Warren, of New York City, and James W. Stites and Doolan, Helm, Stites & Wood, all of Louisville, Ky., for plaintiff.

Allen & Clarke, of Louisville, Ky., and McConnico, Armistead, Waller & Davis and Norvell & Minick, all of Nashville, Tenn., for Nashville Coal Co. and Justin Potter.

Laurence B. Finn and Finn & Orendorf, all of Bowling Green, Ky., for defendant Henry D. Fitch.

MILLER, District Judge.

This action was brought by the plaintiff Kentucky-Tennessee Light and Power Company against the defendants, Nashville Coal Company, Justin Potter and Henry D. Fitch to recover $315,202.11 as treble damages claimed to have been suffered by the plaintiff by reason of violation of the provisions of the Robinson-Patman Price Discrimination Act, Title 15 U.S.C.A. § 13 (c). The action is authorized by Section 4 of the Clayton Act, Title 15 U.S.C.A. § 15. The matter is before the court on defendants' motions to dismiss the complaint, to make the complaint more definite and to strike from the record a bill of particulars filed by the plaintiff. The points raised by the various motions have been thoroughly and extensively briefed by eleven separate briefs to such an extent as to make it impractical for the court to discuss the various questions presented in as much detail as discussed in the briefs.

The complaint states the following facts: The plaintiff, Kentucky-Tennessee Light and Power Company, (hereinafter referred to as K-T Company) is a Kentucky corporation, and owns and operates plants for the manufacture or supplying of water, light or electric power at Frankfort, Bowling Green, Hopkinsville, Mayfield and Cadiz in the State of Kentucky, and at Jellico, Martin and Clarksville, in the State of Tennessee. The defendant, Henry D.

Fitch, was president and chief officer of the K-T Company. The Nashville Coal Company (hereinafter referred to as the Coal Company) is a Tennessee corporation having an agent residing in Louisville, Kentucky. The defendant, Justin Potter, is a resident of Tennessee and the president of the Coal Company. On March 7, 1933, the Coal Company through Potter entered into a written contract with the K-T Company whereby the Coal Company agreed to sell and deliver to the K-T Company the coal which was necessary to meet the entire requirements of the K-T Company for a period of five years beginning April 1, 1933, shipments to be made as and when directed. On April 6, 1937, the Nashville Coal Company executed another contract with the K-T Company containing substantially the same provisions as the contract of March 7, 1933, but this contract was dated back to March 7, 1933, and provided that it was to run for a period of ten years. Subsequent to March 7, 1933, the K-T Company purchased its coal requirements from the Coal Company, and in particular purchased 211,565.89 tons of coal at the price of $244,395.42 between the dates of June 19, 1936 (the effective date of the Robinson-Patman Act) and September 12, 1939, which date marked the end of the acts complained of. It is alleged that the Coal Company through Potter, without knowledge on the part of the K-T Company, paid Fitch a commission of from ten cents to fifteen cents a ton on all of the coal purchased under said contracts between the dates above mentioned, which payments were not for any services rendered by Fitch in connection with the sale or purchase of said coal, but were made solely for the purpose of inducing Fitch to purchase on behalf of the K-T Company from the Coal Company the coal so purchased at prices far in excess of the fair market value of such coal; that between said dates Fitch without the knowledge of the K-T Company received and accepted a commission from ten cents to fifteen cents a ton on all of the coal purchased under said contracts; that Fitch during said times was a full-time employee of the K-T Company at a salary of $25,000 per year, and was not acting for or on behalf of the Coal Company or as its agent in said transactions. It is charged that the Coal Company maintained an account on its books known as "N. W. Moore Commission Account, No. 45", and that the payments made by the Coal Company to Fitch were listed in this account and amounted to the sum of $28,500.08. The K-T Company alleges that it could have purchased coal of similar or better kind and quality from others at greatly reduced prices, and that it was injured in its business and property by reason of such excessive prices in the sum of $105,067.37. The complaint states that the Coal Company, Potter and Fitch in the negotiation and performance of said contracts were engaged in interstate commerce, and that the Coal Company shipped coal under said contract from mines in Tennessee to the K-T plants in Kentucky and from mines in Kentucky to the K-T plants in Tennessee; and that all of the negotiations regarding said contracts and purchases were carried on with the Coal Company through Potter, and the payment of commissions was made by and through Potter to Fitch. The complaint files as exhibits photostatic copies of the two contracts referred to and the Commission Account No. 45 in the name of N. W. Moore, and a detailed statement showing the dates, kind and price of coal shipped for all purchases by the K-T Company from the Coal Company from June 19, 1936, through August 31, 1939, for the plants of the K-T Company at Bowling Green, Hopkinsville, Mayfield and Frankfort, Kentucky, and at Clarksville and Martin, Tennessee. A bill of particulars filed later lists all shipments of coal which moved in interstate commerce, included in said purchases, giving the name of the shipper, origin and destination of the shipment, its date, amount, kind and price.

All three defendants have filed motions to dismiss the complaint. The Coal Company and Potter filed motions for a bill of particulars setting out in detail additional information requested. Defendant Fitch filed a motion to make the complaint more definite and certain by stating what acts are relied upon as constituting interstate commerce. Defendant Fitch also filed a motion to strike from the complaint the allegations pertaining to the N. W. Moore Commission Account No. 45 and that exhibit. Without waiting for these motions to be acted upon the plaintiff filed a bill of particulars which set out in detail the facts pertaining to its business, the various shipments of coal from the Coal Company to the plaintiff, and copies of correspondence and testimony given in hearings before the Securities and Exchange Commission. Thereafter defendant Fitch moved to strike the bill of particulars from the record.

I think it is unnecessary to devote much time to a discussion of the motions to make the petition more definite, for a bill of particulars and the motions to strike. From the facts above stated it is apparent that the exhibits filed with the complaint and the bill of particulars filed later gave to the defendants all the information which it is necessary for them to have in order to determine what facts and transactions are relied upon by the plaintiff. They are given with considerable detail. There may be additional information which the defendants desire to have, but it can be obtained in other ways, such as by interrogation and discovery. I see no reason why the pleadings should be loaded down with miscellaneous information in the nature of evidence pertaining to the issues involved, provided that the allegations of the complaint are sufficiently definite to show what acts and transactions are relied upon as constituting the alleged cause of action. The allegations and exhibits dealing with the N. W. Moore Commission Account No. 45 is in the nature of a bill of particulars in order to enable the defendants to know what facts the plaintiff intends to show in support of its allegation that the payments made to Fitch were made secretly and are not prejudicial to any of the defendants. I recognize the contention of defendant Fitch that the mere existence of the commission account does not show he had knowledge of it, and if plaintiff's evidence should fail to connect this defendant with the keeping of the account in that way such evidence might be incompetent and should not be submitted to a jury. But that is an entirely different question than the one raised by a motion to strike certain allegations from a complaint. All of these motions (excepting motions to dismiss) are being considered as directed to the complaint after it has been supplemented by the bill of particulars and considering the detailed information furnished by the bill of particulars they are overruled.

### Motions to Dismiss.

The motions to dismiss raise the real issues in this case. Inasmuch as all three defendants rely in the main upon the same grounds the motions will be discussed jointly. The underlying theory of the motions, advanced by way of six separate contentions, is that the provisions of the Robinson-Patman Act, relied upon by the plaintiff, do not apply to the transactions complained of in the complaint. In discussing these contentions it is accordingly necessary to have before us the exact wording of the statutory provisions under consideration. It is Section 1(c) of the Robinson-Patman Act which amends Section 2 of the Clayton Act, (approved October 15, 1914), which act was in itself an amendment to the Sherman Anti-Trust Act of July 2, 1890, 15 U.S.C.A. §§ 1–7, 15 note. It is set out in Title 15 U.S.C.A. § 13(c), and reads as follows: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

Section 1 of the Robinson-Patman Act contains in addition to Subsection (c), quoted above, subsections (a, b, d, e, and f), and since it is an amendment of Section 2 of the Clayton Act the various subsections will be herein referred to as Section 2, Subsections (a) through (f), respectively.

It will be seen that the act applies both to the payment of commissions (under which provision the Coal Company and Potter are made defendants), and to the receipt of commissions (under which provision Fitch is made a defendant). The complaint alleges that the commissions paid and received were not for any services rendered in connection with the sale or purchase of coal, which, being considered as true on a motion to dismiss, takes the case outside of the exemption allowed by the statute. Do the facts as stated bring the transaction within the terms of the statute?

Defendants claim that Section 2(c) does not apply to a case involving payment of a commission by the seller to an agent of the buyer where such agent retains the payment for his own use and benefit, which type of transaction is commonly termed "commercial bribery." They contend that the act only applies where pay-

ments are made direct to the other party or to an agent of the other party who turns them over to such party. In the present case it is charged that Fitch received and kept the payments; it is not alleged that the commissions were turned over by him to the buyer. It is argued that the words "acting in fact for or in behalf * * * of any party to such transaction" eliminates a situation where such agent or intermediary is acting and receiving the compensation for his own benefit. Defendants state that this exact point has not been previously passed upon by any court. Both plaintiff and defendants refer to the following cases as throwing light upon the question. Biddle Purchasing Co. v. Federal Trade Commission, 2 Cir., 96 F.2d 687; Oliver Bros. v. Federal Trade Commission, 4 Cir., 102 F.2d 763; Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, 3 Cir., 106 F.2d 667; Webb-Crawford Co. v. Federal Trade Commission, 5 Cir., 109 F.2d 268, 270. The first three of these cases involve the payment of commissions by the seller to an agent of the buyer who in turn pays it over to the buyer. They hold such payments illegal under Section 2(c). However, this does not mean, as contended for by the defendants, that the payments would be legal if the agents kept them. That particular question was not before the court in any of those cases. In the fourth case cited above the seller made payment of a commission to some stockholders of the buyer corporation who acted as agent for the buyer in making the purchases. This was held illegal, and would appear to be in point with the present case. The opinion stated "without reflecting on the faithfulness or honesty of anyone here concerned, it is evident that the tendency and general results are precisely the same as if The Webb-Crawford Company, the buyer, had gotten the commissions. And the law equally condemns both things." Defendants claim that the decision is not in point because the court treated the payment the same as if it was made to the corporation. I do not place that construction upon the ruling. The facts were that the individuals received and retained the commission, and the buyer in its corporate entity did not receive this money. The court condemned the transaction equally as other transactions are condemned where the buyer receives the payment, because the results in both cases are the same insofar as they violate the purpose of the Robinson-Patman

Act. I find nothing in the opinion that indicates that the decision was based upon a disregard of the corporate fiction as would have to exist in order for the decision not to be applicable. In addition, the opinions in two of the other cases use words which indicate that the courts considered both transactions in the same light. Such expressions are of course dicta, but they do throw some light upon the lack of distinction on the part of the court between the two situations. In the Biddle case [96 F.2d 691], the opinion, speaking generally, said: "It is clear that the statute prohibits payment of brokerage by the seller to the buyer or his agent or representative or controlled intermediary except for services rendered. Congress intended to prohibit such payments as an unfair trade practice."

In the Great Atlantic & Pacific Tea Company case [106 F.2d 674], the opinion, again speaking generally said: "At each stage of its enactment, paragraph (c) was declared to be an absolute prohibition of the payment of brokerage to buyers or buyers' representatives or agents. Such is the plain intent of the Congress and thus we construe the statute. Any other result would frustrate the intent of Congress."

It will be noticed that the statute uses the disjunctive "either/or" in making illegal the payment of a commission except for services rendered "either to the other party to such transaction or to an agent, representative, or other intermediary." Effect must be given to the use of such words. It will also be noticed that the words relied upon by defendants "acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction" qualify the word "intermediary," but do not qualify the word "agent" or the word "representative." The qualifying words were used for the purpose of excluding from the act legitimate brokerage, which is in no wise condemned by the act. Since a broker would be an "intermediary," legitimate brokerage would be included and made illegal unless such qualifying words were used. The act catches such intermediaries as are acting for the buyer or under the buyer's control, without being an agent or representative in the legal sense of the word. Accordingly, the statute makes it illegal to make such a payment either to the other party to the transaction or to an agent or representative of such party. These are plain words and

mean what they say. Fitch was certainly an agent or representative of the buyer who was the other party to the transactions under consideration. Unless this construction is given to the statute, Section 2(c) would be largely superfluous, in that it would only apply to rebates which ultimately go to the purchaser, and such a transaction is covered by Section 2(a) which deals with price discrimination between purchasers.

Defendants further contend on this point that the payment of a commission to the agent for his own use does not result in lessening competition nor does it tend to create a monopoly, and accordingly such transactions are not within the general purpose of the anti-trust law. These same contentions were advanced and rejected by the courts in the cases of Oliver Bros. v. Federal Trade Commission, supra, Biddle Purchasing Co. v. Federal Trade Commission, supra, and Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, supra. It is unnecessary to repeat here in detail the reasons, as given in those opinions, why this contention is unsound. Those opinions discuss the history of anti-trust legislation; they show that certain loopholes in the Sherman Anti-Trust Law were corrected by passage of the Clayton Act in 1914; and that certain difficulties which were found to still exist after the passage of that act were attempted to be remedied by the passage of the Robinson-Patman Act in 1936. The scope of such legislation has accordingly been greatly enlarged over the period of years. It would be contrary to this evident purpose of Congress to take at the present time a narrow technical restricted view of the language used. Section 2(a) retained the original wording of previous legislation which required a showing of monopolistic tendencies or a restraint of commerce in order to violate the act. Sections 2(c), 2(d) and 2(e) are entirely new sections and eliminate the necessity of showing any such results when considering the transactions specifically set out in those three sections. As was said in Oliver Bros. v. Federal Trade Commission, supra [102 F.2d 767], "it is perfectly clear that all three of these practices [2(c), 2(d), and 2(e)] were forbidden because of their tendency to lessen competition and create monopoly, without regard to their effect in a particular case; and there is no reason to read into the sections forbidding them the limitations contained in section 2(a) having relation to price discrimination, which is an extremely difficult matter to deal with and is condemned as unfair only in those cases where it has an effect in suppressing competition or in tending to create monopoly. The forbidding of specific practices because of their tendency toward a general result, also forbidden, is familiar legislative practice; and no reason suggests itself why the limitations and provisions relating to one should be read into those relating to the other." Accordingly, I am of the opinion that acts of commercial bribery, where the agent keeps the payment instead of transmitting it to his principal, the buyer, are covered by Section 2(c) of the Act, just as much as cases where the payment is made directly or indirectly to the buyer.

Defendants next contend that no cause of action exists because the alleged injury to the plaintiff is a private wrong instead of an injury to the public, and that the act requires a showing of an injury to the public before any wrong has been committed. What I have just said immediately preceding is also the answer to this contention, which ignores the change made in the Clayton Act by the passage of the Robinson-Patman Act. The Clayton Act (now Section 2(a) required a showing of injury to the public. The additions made by the Robinson-Patman Act (Sections 2(c), 2(d), and 2(e), do not require any such showing in order to make the act illegal. If the act complained of is illegal the plaintiff is entitled to the civil remedy given by Section 4 of the Clayton Act, Title 15 U.S.C.A. § 15, which provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

This civil remedy of treble damages is not limited to competitors of the buyer, but is specifically granted to "any person who shall be injured." See Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044; Coronado Coal Co. v. United Mine Workers, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963; City of Atlanta v. Chattanooga Foundry &

Pipeworks, 6 Cir., 127 F. 23, 64 L.R.A. 721, affirmed 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241.

Defendants contend that the payments of the commissions to Fitch were not made by a "person engaged in commerce, in the course of such commerce," as is required by the act. They point out that the interstate shipments of coal to the plaintiff were not under the contracts, and that the intrastate shipments which were made under the contracts were not in commerce. The affidavit of the defendant Potter is filed in support of this contention. It appears to the court that this point is largely theoretical and technical and fails to give full effect to the pleaded facts. There can be no question but that the plaintiff in manufacturing and supplying water, light and power to consumers in both Kentucky and Tennessee is engaged in commerce. Consumers Power Company v. National Labor Relations Board, 6 Cir., 113 F.2d 38; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126. The petition alleges that the Coal Company shipped coal under its contract from mines in Tennessee to the plants of the plaintiff in Kentucky and from mines in Kentucky to plants of the plaintiff in Tennessee. These are interstate shipments, and the bill of particulars sets out in detail each shipment which moved in interstate commerce. It is immaterial whether these shipments were made under the contracts in existence or were made independently of such contracts. In either event they are purchases of coal by the plaintiff from the Coal Company and interstate shipments made pursuant to such purchases. This action is not based upon the making of the contracts. It is based upon commissions paid to Fitch upon coal purchased by the plaintiff from the Coal Company. The payment of the commission is the gist of the action. The pre-existing contracts may be the basis for the purchase by the plaintiff of coal from the Coal Company as it becomes necessary for such coal to be purchased, but it is the actual purchase of the coal at a definite price and the payment of the commission to the buyer's agent upon that purchase that creates the liability. When goods are purchased in one state for transportation and use in another state, the sale is interstate commerce as well as the transportation thereafter. Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518;

Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 290, 42 S.Ct. 106, 66 L.Ed. 239; Lemke v. Farmers' Grain Co., 258 U.S. 50, 54, 42 S.Ct. 244, 66 L.Ed. 458; United States v. Rock Royal Co-Op., 307 U.S. 533, 568, 59 S.Ct. 993, 83 L.Ed. 1446. Accordingly, if the purchase of coal and the shipment of the coal pursuant to such purchase is commerce, and the payment of the commission is made as a part of that particular purchase, it would seem clear that the person selling the coal was engaged in commerce and the commission on such a sale was made "in the course of such commerce." Defendants' argument ignores the allegations of the complaint, which states in addition to the interstate shipments above referred to that the three defendants in the performance of said contracts were engaged in interstate commerce. It is evidently assumed that the statements contained in Potter's affidavit denying the interstate character of the shipments are to be taken as the facts in the case in passing upon these motions. Defendants contend that Rule 12(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, permits the filing by defendant of a "speaking motion" which can be supported by affidavits, which affidavits should be considered in passing upon the motion. Alabama Independent Service Station Ass'n v. Shell P. Corp., D.C.N.D.Ala., 28 F.Supp. 386 so holds. I construe the rule differently. Rule 12(b) permits certain specified defenses to be made by motion before the filing of a responsive pleading. Such objections are generally in the nature of objections to jurisdiction, venue, sufficiency of process or the service of process, and failure to state facts constituting a cause of action. The rule does not specifically provide that affidavits may be filed in support of such motions, but no doubt affidavits can be properly filed in order to bring to the attention of the court certain additional facts which are not presented by the pleading to which the motion is filed, and which would bear upon the question of jurisdiction, venue or process. Such questions in the natural course of events would not be disclosed by the pleading and should become a part of the record in order for such questions to be properly passed upon. Under such circumstances a "speaking motion" supported by affidavit is proper. Potter's affidavit is not of that type. It attempts to contradict the allegations of the complaint. Such issues of fact made by affidavits are not to be consid-

ered on a motion to dismiss. It may be true that for the purposes of a subsequent trial the defendant denies the existence of the facts alleged, or pleads additional facts by way of avoidance, but under such circumstances those defenses must be contained in a responsive pleading and any issues of fact raised thereby tried by court or jury in accordance with usual trial procedure, which is by testimony from witnesses, and not by conflicting affidavits. The point raised by the facts stated in Potter's affidavit is one to be considered at the close of all the evidence, when both plaintiff and defendants have fully met the issue. Plaintiff has briefly and correctly stated the rule in everyday language when it states that Rule 12(b) does not contemplate or allow, with respect to anything stated in the complaint, a "battle of affidavits." In support of their right to file supporting affidavits, defendants rely upon Rule 56(b), with the added suggestion that even though Rule 56(b) may not technically be applicable to the present case, yet the principle therein enunciated should be applicable in the same way to motions made under Rule 12(b). Rule 56 deals with summary judgments, and Subsection (b) gives the defending party in an action the right at any time to move with or without supporting affidavits for a summary judgment in his favor. But summary judgment procedure is essentially different from the procedure involving genuine issues of fact. It is the lack of any genuine issue as to any material fact that forms the basis for the rendition of such a judgment. It is the exception to the general rule, expressly allowed by Rule 56, which permits the filing and consideration of such affidavits, and the use of them is obviously limited to summary judgment procedure. We have therefore given no consideration to the facts stated in Potter's affidavit filed in support of the motions to dismiss and have considered the matter solely upon the allegations contained in the complaint and the bill of particulars, which under Rule 12(e) becomes a part of the pleading which it supplements.

We likewise believe that it is immaterial that only part of the coal shipments from the Coal Company to the K-T Company were interstate shipments. It is well settled that the power of Congress to regulate interstate commerce is plenary and extends to all such commerce, be it great or small. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 606, 607, 59 S.Ct. 668, 83 L.Ed. 1014; National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; Consumers Power Co. v. National Labor Relations Board, 6 Cir., 113 F.2d 38; National Labor Relations Board v. Prettyman, 6 Cir., 117 F.2d 786, decided February 13, 1941. We also believe that this fact does not prevent the transactions complained of from being "in the course of such commerce" as required by the act. This phrase is not to be narrowly restricted to sales made by the discriminating seller, but includes the commerce of the purchaser with respect to the article received although such purchase and receipt in itself may be strictly an intrastate transaction. See American Can Co. v. Ladoga Canning Co., 7 Cir., 44 F.2d 763; Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; Lemke v. Farmers' Grain Co., 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458. Even though the acts complained of may be strictly local transactions in themselves, yet if they are a related part of a larger transaction which is in its entirety a transaction in commerce, the local transactions are likewise in commerce and subject to federal regulation. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Motion Picture Patents Co. v. Universal Film Mfg. Co., 2 Cir., 235 F. 398; Alabama Independent Service Station Ass'n v. Shell Petroleum Corp., D.C., 28 F.Supp. 386.

The defendants further contend that the coal purchase contracts are illegal and as a matter of public policy no cause of action should be allowed to arise out of them. In considering this contention it can be assumed that the contracts in question are illegal. But the present action is not one to enforce the coal purchase contracts nor to recover damages for any alleged breach. The action is one sounding in tort for a liability created by statute. The acts complained of cause just as much damage regardless of the legality or illegality of the contracts out of which they arise. In the present case our attention must be centered upon the payments of commissions, and we are to consider the legality or illegality of those payments, rather than the legality or illegality of a purchase contract under which the pay-

738

ments were made. A tort-feasor is not to be granted exemption from liability because the act was committed in the performance of an invalid contract. If Potter had undertaken to carry the payment to Fitch in cash by automobile and in so doing negligently injured a pedestrian on the road, the invalidity of the contract giving rise to the payment would be no defense to the injured party's action for damages. The same principle is applicable here.

Defendants also contend that the action should be dismissed because it is barred by the five-year statute of limitations as set out in Section 2515 of Carroll's Kentucky Statutes. This proceeds upon the theory that the cause of action arises out of the alleged inducing and procurement of the execution of the coal purchase contract in March, 1933, which is more than five years before this action was filed. This again fails to recognize the essential nature of the present suit. As stated in the preceding paragraph the cause of action arises out of the payment of commissions subsequent to June 19, 1936, the effective date of the Robinson-Patman Act. Such payments of commissions were not illegal before that time and no cause of action for treble damages by reason thereof existed under the Clayton Act until that date. Five years have not yet expired.

The defendant Potter further contends that although a cause of action may exist against the Coal Company yet none exists against him individually, in that he was merely the agent of the selling corporation which paid the commissions now alleged to be illegal. It is pointed out that the statute makes it unlawful for the seller to pay commissions under designated circumstances; Potter individually was not the seller, and the act omits such words as "agent, officer or representative of the seller." This is again a technical and strained construction of the act. It is a well-established rule of principal and agent that an agent is liable for his own tortious acts even though performed within the scope of his employment, and under conditions which impose liability upon the principal also. An agent does not escape personal liability because the act complained of imposes liability upon the principal. Clabaugh v. Southern Wholesale Grocers' Association, C.C., 181 F. 706. Section 14 of the Clayton Act, Title 15 U.S.C.A. § 24, provides that whenever a corporation shall violate any of the penal provisions of the anti-trust law, such violation shall be deemed to be also that of the individual officers or agents of such corporation who shall have authorized or done any of the acts constituting such violation. If the payments of the commissions to Fitch by the Coal Company are illegal under the Robinson-Patman Act, such violation of the law is also charged to the defendant Potter who authorized the payments and made them as agent of the corporation. This brings Potter, as well as the Coal Company, within the civil liabilities provided by Section 4 of the Act, which gives a cause of action by reason of anything forbidden in the anti-trust law.

It appears from the foregoing discussion of the provisions of the Clayton Act, as amended by the Robinson-Patman Act, that the complaint states facts sufficient to constitute a cause of action against each of the defendants herein, and accordingly their various motions to dismiss the complaint are overruled.