No. 32,716

HENRY L. DOHERTY, *Appellant* and *Appellee*, v. THE KANSAS CITY STAR COMPANY and ROY A. ROBERTS, *Appellees* and *Appellants*.

(57 P. 2d 43)

Opinion filed May 9, 1936.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, *Fred Robertson, E. M. Boddington* and *J. O. Emerson,* all of Kansas City, for the appellant.

*T. M. Lillard,* of Topeka, *W. F. Lilleston,* of Wichita, *I. N. Watson, Henry N. Ess* and *Paul Barnett,* all of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

BURCH, C. J.: The action was one by Henry L. Doherty against the Kansas City Star Company and its manager, Roy A. Roberts, for damages for libel. Demurrers were sustained to certain causes of action contained in the petition, demurrers to other causes of action were overruled, and all parties appeal.

Plaintiff is president and chief managing officer of Cities Service

Company, a corporation, whose principal office is at No. 60 Wall street, New York City. He is also a utility operator and engineer, and under the name Henry L. Doherty & Co. maintains a staff for the rendition of managerial, engineering, financial and other services to public utilities, including the Kansas City Gas Co., of Kansas City, Mo., the Wyandotte County Gas Co., of Kansas City, Kan., the Capital Gas & Electric Co., of Topeka, Kan., and other corporations supplying natural gas to cities and their inhabitants.

The Kansas City Star Company is a corporation of the state of Missouri, engaged in the business of publishing two newspapers, the Kansas City *Times*, a morning paper, and the Kansas City *Star*, an evening paper, each having wide circulation in the states of Missouri, Kansas, and elsewhere. The papers are published at the principal office and place of business of the company in Kansas City, Mo. In conduct of its business, the company maintains offices, and employs agents and servants in the state of Kansas. Being engaged in interstate commerce, the company has neither applied for nor received a grant of authority from the charter board of the state of Kansas to do business in this state.

The defendant, Roy A. Roberts, a resident of Kansas, is one of the chief managing officers of the Kansas City Star Company.

The Kansas City Star Company was served by delivery of summons to a news correspondent in the city of Topeka, Kan.

The petition contained six causes of action which, for brevity, will be referred to as counts. The Star company demurred to counts 1, 2, 3 and 4. The demurrer to count 1 was based on the statute of limitations and other grounds. The demurrer to count 2 was based on the statute of limitations alone. The demurrer to count 3 was based on the statute of limitations and other grounds. The demurrer to count 4 was based on grounds other than the statute of limitations.

Roberts demurred to counts 1, 3 and 4, on the ground those counts did not state facts sufficient to constitute causes of action. Because of absence from the state, he was not in position to urge the statute of limitations. The court sustained the demurrers to counts 1 and 3, and overruled the demurrer to count 4.

As indicated, the Star company demurred to counts 1, 2 and 3, on the ground action was barred by the statute of limitations. Action was barred by the statute of limitations if the Star company, a foreign corporation engaged in interstate commerce, doing business

in this state and subject to service of process here, was privileged to plead the statute.

Previous to 1905 the statute read as follows:·

"If when a cause of action accrues against a person he be out of the state, or has absconded or concealed himself, the period limited for the commencement of the action shall· not begin to run until he comes into the state, or while he is so absconded or concealed; and if after the cause of action accrues he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

In December, 1903, this court rendered its decision in the case of *Williams v. Railway Co.*, 68 Kan. 17, 74 Pac. 600, the syllabus of which reads:

"A foreign corporation is 'out of the state,' within the meaning of section 21 of the code (Gen. Stat. 1901, § 4449), and for that reason cannot avail itself of the statute of limitations of this state."

The decision was based solely on implications from the metaphysical conception of a corporation, which were pressed so far they were incongruous with the realities of this world of practical affairs. The result was, that at the next ensuing session of the legislature, which assembled in 1905, the statute was amended by the addition of a proviso which reads:

"*Provided,* This act shall not apply to any foreign corporation authorized to do business in the state upon which service of process can be had within the state."

The original statute plus the amendment appears as R. S. 60-309.

A person has a physical existence and may go from place to place to accomplish his purposes and satisfy his desires. When the statute came into existence in covered-wagon days, it was conceived the running of the statute ought to be suspended while one against whom a cause of action arose or existed was out of the state, and although the statute was one of repose, it was so framed that it applied even although a form of personal service, by leaving copy of summons at usual place of residence, might be made.

A corporation was merely a mental concept. Because, however, a corporation could do most of the things a person could do, it was necessary to attribute to a corporation the fact of existence. Having existence, a place in space in which to exist was logically necessary. Therefore, the abstraction was assigned a hypothetical domicile. That was as far as reasoning of the type employed could go toward

the concrete, and capacity of a corporation to be anywhere except in the state of domicile was denied.

The railway company involved in the Williams case was a Missouri corporation. It built a line of street railway from Missouri into Kansas, and proceeded to engage in the carriage of passengers in interstate commerce. The railway was a unit. Operation of the railway in Missouri and in Kansas was unitary, but there were offices, agents, and carbarns in Kansas. The corporation could operate streetcars here, could be guilty of negligence in operation of its cars here, could cause injury to a passenger here, and could be sued for damages here whenever an injured person chose to do so. The corporation, however, could not cross the mathematical line between Kansas and Missouri, and be in Kansas. Therefore, so far as the statute of limitations was concerned, the corporation was out of the state of Kansas for seven years after an accident to a passenger occurred in Kansas, and before action for damages was commenced. That was plainly too theoretical, and the legislature undertook to rationalize the statute of limitations as applicable to actions against foreign corporations doing business here.

There were corporations and corporations which existed by virtue of the laws of other states. Some of them could not do business here at all and would be subject to immediate ouster if they attempted to do so. Some of them could obtain permission to do business here. Some of them could do business here without any permission and without liability to ouster. The effect of the statute was, that any corporation authorized to do business here, and upon which process could be served here, could plead the statute of limitations, despite the fiction of being out of the state.

The specific words of the statute were, "authorized to do business" here.

"To authorize," in the active sense, is to clothe with authority, and in this sense implies an affirmative grant of power. The person so clothed is authorized. The word "authorized," however, need not have any implication of a grantor and a grantee of power. The word also indicates merely possessed of authority; that is, possessed of legal or rightful power, the synonym of which is "competency." The court is authorized to say this on the authority of Webster's New International Dictionary, second edition.

The legislature of 1905 was perfectly familiar with use of the word "authorized" in the sense just indicated. In another amendment of

the code of civil procedure, taking effect at the same time as the amendment relating to the statute of limitations, the legislature so used the word:

"Whenever a cause of action has accrued under or by virtue of the laws of any other state or territory, such cause of action may be sued upon in any of the courts of this state, by the person or persons who are authorized to bring and maintain an action thereon in the state or territory where the same arose, provided one or more of the parties entitled to the proceeds of said action are at the time of beginning said action residents of the state of Kansas." (Laws 1905, ch. 325, § 1.)

It would be idle to contend the legislature here meant a person who had been duly commissioned to sue. The statute meant simply that a person who could sue in his own state can sue here.

The statute was remedial, and is to be liberally construed. There is no indication the legislature intended to classify corporations, equal in right to do business in this state, and to deny to some of them a privilege extended to others. If that were the meaning, the statute failed of its purpose to correct the undesirable result of the decision in the Williams case, which occasioned enactment of the statute. In the Williams case, the facts were found with painstaking completeness. The only authority granted to the railway company in the state of Kansas was municipal authority to lay tracks in the streets of Kansas City, Argentine and Rosedale. If a narrow view of the statute were to prevail, the railway company would still be prohibited from pleading the statute of limitations against actions on seven- and ten-year-old damage claims, because of the same old chimera, it was out of the state.

The Star company needed no grant of authority from the charter board to come into this state and prosecute the various activities which comprised and were incidental to its interstate commerce business. It is rightfully conducting its business here and so is authorized, in the sense of the statute, to do business here.

The result of the foregoing is, the Star company's demurrers to counts 1 and 3 were properly sustained, and the demurrer to count 2 should have been sustained.

Count 4 was based on a cartoon, published in one of the Star company's newspapers. The ground of the Star company's demurrer to that count was, that the cartoon was not libelous. It is not necessary to perpetuate the cartoon in the Kansas reports. The court regards the picture as designed to bring Doherty into public hatred,

contempt and ridicule, and the Star company's demurrer to the fourth count of the petition was properly overruled.

It follows from what has just been said that Roberts' demurrer to the fourth count of the petition was properly overruled.

The third count of the petition was also based on a cartoon which was clearly libelous, and Roberts' demurrer to that count should have been overruled.

The court has carefully considered the article, published in the Kansas City *Star*, forming the basis of the first count of the petition. The first paragraph of the article had no reference to Doherty. The second paragraph of the article did not warrant the interpretation placed upon it by the innuendo. No other meaning is open to consideration, and the court holds Roberts' demurrer to the first count of the petition was properly sustained.

The judgment of the district court is affirmed in part, and is reversed in part, as indicated in the foregoing opinion.

HARVEY, J., dissents from the first paragraph of the syllabus and corresponding portion of the opinion.

SMITH, J. (dissenting from the ruling regarding the fourth count of the petition): I dissent from the conclusion reached by a majority of the court that the fourth count stated a cause of action. In my opinion the cartoon upon which the count is based expresses nothing but a graphic statement of an opinion that some gas companies had been charging exorbitant rates for gas and the public had become aroused over it, and that plaintiff was concerned about this feeling on the part of the public. In my opinion the cartoon does not convey the idea that plaintiff had been fixing exorbitant rates, only that the public thought this and was aroused over it. What constitutes an exorbitant rate is a matter of opinion. In my opinion this count is too trivial to take up the time of the courts in adjudicating it.