### ELECTRIC THEATER CO. v. TWENTIETH CENTURY–FOX FILM CORP. et al.

No. 7674.

United States District Court
W. D. Missouri, W. D.
July 18, 1953.

William G. Boatright, Kansas City, Mo., for plaintiff.

Joseph J. Kelly, Jr., and James C. Wilson, Kansas City, Mo., for defendants.

RIDGE, District Judge.

On July 15, 1952, this action was brought pursuant to Sec. 4 of the Clayton Act, 15 U.S.C.A. § 15, charging defendants with violating the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1, 2, and praying recovery of statutory treble damages.

By order of Court, dated January 31, 1953, separate trial on the issue of statute of limitations was granted. Stipulation of facts and well-prepared briefs having been submitted by the parties on this preliminary but very vital issue; we proceed to dispose of it at this time.

■ At the outset, it is recognized that there is no "federal statute of limitations" applicable to anti-trust, treble damage actions. Consequently, it is incumbent upon this Court to apply the statute of limitations of the *lex fori*, which in this instance is that of the State of Missouri, in the absence of qualifying considerations. To state the same proposition in slightly different words, in actions of this kind a federal court looks to the applicable statute of limitations of the State wherein the action is brought, to determine a claim of bar made by way of limitation. Dipson Theatres, Inc. v. Buffalo Theatres, Inc., D.C.N.Y., 1948, 8 F.R.D. 86; Winkler-Koch Engineering Co. v. Universal Oil Products Co., D.C.N.Y., 1947, 79 F.Supp. 1013; Bascom Launder Corp. v. Farny, D.C.N.Y., 1950, 10 F.R.D. 421; Christensen v. Paramount Pictures, Inc., D.C.Utah, 1950, 95 F.Supp. 446. Also see Cope v. Anderson, Receiver, 1947, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602.

■ Although a federal court looks to the statute of limitations of the State wherein it is sitting, it is equally true that it must look to any qualifying directive imposed by the so-called "borrowing" statute of that state. Cope v. Anderson, Receiver, supra. A "borrowing" statute is a directive of the state, whose own limitation period might otherwise be applicable, requiring the court to apply, or "borrow", the statutory period prescribed by the laws of the state where a pending cause of action first accrued. Missouri has such a "borrowing" statute. It provides as follows:

Mo.R.S.1949, Sec. 516.180, V.A.M.S.: "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it orig-

inated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state."

In light of this "borrowing" statute, supra, we must ascertain where the instant cause of action "originated". In our opinion, there can be little question but that it originated in Kansas. Although none of the defendants were ever licensed under Kansas law to transact business in that State, nevertheless plaintiff's business, and the damage sustained as a result of the monopoly charged, both took place within the confines of that State. 15 U.S.C.A. § 15, expressly provides that recovery for anti-trust law violations is to be given to any person thereby "injured in his business or property". Since, therefore, plaintiff's private right of action necessarily accrued when, and only when, it was injured in its business or property, it follows that the right of action here asserted "originated" where said business or property was located, viz., in Kansas. Even though proof of conspiracy is a fundamental burden which plaintiff must assume, the fact that such conspiracy, if true, took place outside of Kansas does not preclude a finding that plaintiff's cause of action originated in Kansas. Plaintiff's cause of action is not derived from the mere conspiracy charged, but from the damage proximately resulting therefrom. Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 1934, 72 F.2d 885; Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 1936, 85 F.2d 742; Momand v. Universal Film Exchanges, D.C.Mass., 1942, 43 F.Supp. 996. As expressed and fully supported by authorities in defendants' briefs, a cause of action for injury to person or property accrues or originates at the place where the person or property is located at the time of injury. Seaboard Terminals Corporation v. Standard Oil Co. of New Jersey, D.C.N.Y., 1938, 24 F.Supp. 1018; see also, Hughes Provision Co. v. La Mear Poultry & Egg Co., Mo.App., 1951, 242 S.W.2d 285. This whole subject of the *locus delicti* is well established in the law of torts, and is, therefore, fully applicable in solving the instant question, since it is held that an action for treble damages under the Sherman Anti-Trust Act is "one

sounding in tort for a liability created by statute." Kentucky-Tennessee Light & Power Co. v. Nashville Coal Co., D.C.Ky., 1941, 37 F.Supp. 728, 737; see also, Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 1943, 138 F.2d 967.

Plaintiff's cause of action having thus "originated" in Kansas, it would seem to follow that statutes of limitation of that State only need be resorted to, to ascertain the applicable limitation period in light of the Missouri "borrowing" statute, supra. However, the matter is not that simple of resolution. Kansas has a tolling section included in its statute of limitations applicable to foreign corporations. The Clayton Act, 15 U.S.C.A. § 16, also contains a tolling provision applicable to private Sherman Act cases. Thus additional questions arise that must be disposed of or resolved.

The Kansas tolling statute above referred to provides as follows:

Sec. 60–309, G.S.Kan.1949: "If when a cause of action accrues against a person he be *out of the state* * * * the period limited for the commencement of the action shall not begin to run until he comes into the state, * * *: *Provided, This act shall not apply to any foreign corporation authorized to do business in the state upon which service of process can be had within the state.*" (Italics ours.)

By stipulation of facts before the Court, it appears that none of the defendants herein have ever been licensed under Kansas laws to transact business in that State. As a consequence of that fact and the provisions of the above Kansas tolling statute, both sides have devoted a large portion of their instant briefs to the proposition whether defendants herein as foreign corporations may make claim to the benefits of any Kansas statute of limitation. Plaintiff, chiefly relying upon the 1939 opinion of the Supreme Court of Kansas in the case of Weishaar v. Butters Pump & Equipment Co., 149 Kan. 842, 89 P.2d 864, 122 A.L.R. 1190, takes the position that unless defendants, as foreign corporations, were authorized to do business in Kansas by virtue of Kansas licensing laws, they are

not so privileged. Defendants, with equal vigor and relying heavily on Doherty v. Kansas City Star Co., 1936, 143 Kan. 802, 57 P.2d 43, claim that as foreign corporations engaged in interstate commerce they are "authorized" to do business in Kansas within the ambit of such tolling statute. Interesting as that proposition is, at this stage of unravelment we do not believe that we need resolve the conflict apparent in those opinions of the Supreme Court of Kansas. In our opinion, that matter becomes presently academic, in light of the conclusions hereinafter reached relative to the proper characterization of the instant action under federal law, and that the Kansas 3-year statute of limitation, G.S. 1949, 60–306, has not run so as to bar this action as to any of the defendants.

Before determining the applicability of any statute of limitations governing the instant action, we must first properly characterize the type of action we have before us. Plaintiff asserts that a private Sherman Act case is "an action upon a liability created by statute" remedial and compensatory in character; while defendants urge that it is "an action upon a statute for a penalty or forfeiture" and must be so classified by resort to applicable state statutes of limitation. Under plaintiff's theory, the contention is made that characterization of private Sherman Act actions must be made by consideration of federal law. Defendants strongly urge that such characterization must be made and conformed to the definitive interpretations classifying actions as made by the courts of the state whose statute of limitations is applicable thereto.

 Whatever may be the judicial prerogative of state courts to construe their own statutes, we do not believe that they can ever assume the awesome role of Delphic Oracle on such a fundamental matter as to with finality characterize or classify a purely federal cause of action. It is true that a federal court will, particularly in diversity cases, apply state court construction to a state-derived cause of action. But when state court construction, even of its own statutes, invades the province of characterization in a field divorced from state regulation, then clearly such an invasion of the federal judicial province is entitled to no consideration. The line of demarcation between statutory construction and characterization is often elusive and distressingly vague. Yet, we cannot ignore the distinction. Although by federal law we are directed to the state statute of limitations in cases of this kind, we do not think that such procedural directive transforms state adjective law into a springboard from which state courts can assert a formative influence on federal substantive law. Regardless of defendants' protestations to the contrary, to allow an anti-trust action to be characterized as one for a penalty or forfeiture, depending on state court *stare decisis,* would involve considerably more than "statutory construction" for a limited procedural purpose.

 In support of their argument that state court decisions determine the character of an anti-trust action for the purpose of applying a statute of limitations, defendants cite Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912. It should be parenthetically noted, however, that the Hoskins case did not actually determine the penal or non-penal character of an anti-trust action, nor was the court there faced with statutes similar to those under scrutiny here. Furthermore, the logic of the Hoskins opinion has been subjected to serious criticism in the later case of Wolf Sales Co. v. Rudolph Wurlitzer Co., D.C.Colo., 1952, 105 F.Supp. 506, where the court was faced with the identical problem we have before us here. In that case, Judge Knous stated, 105 F. Supp. loc. cit. 509:

"The defendant places heavy reliance on Hoskins Coal & Dock Corporation v. Truax Traer Coal Co., 7 Cir., 191 F.2d 912. That case held not only that state statutes of limitations govern the time within which actions may be commenced under the treble damage provisions of the Federal antitrust laws, but that state law also determines the nature and import of such actions and thus is decisive as to which of perhaps several conceivable statutory periods of limitation governs. It seems to the Court that if the rule

announced in the Hoskins case is carried to its logical conclusion, a private antitrust suit, based upon identical facts, might be characterized as penal in one state, as remedial in another, as compensatory in a third, as punitive in a fourth, as an action to enforce a forfeiture in a fifth, as perhaps a hybrid of these in a sixth, and so on. The weight of authority is opposed to such a result. As was said by Judge Murrah of this circuit, assigned and sitting as a district judge in Momand v. Twentieth-Century Fox Film Corporation, [D.C.] supra, (37 F.Supp. [649] 652):

"'* * * It is readily conceded that the definition given to the right of action by the Federal law is binding. Stated otherwise, the nature of the cause of action, created and granted by the Sherman Anti-Trust Act ·(15 U.S.C.A. Secs. 1–7, 15 note), is to be determined by the Federal decisions.'"

We agree with the opinion of the Court in the Wolf Sales Co. case. See also, Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743.

We, therefore, turn to federal law to determine the nature or character of this federally-created right of action. Though aware of minority authority to the contrary, we believe that a private anti-trust suit for treble damages is remedial and compensatory, or expressed otherwise, it is not for a forfeiture or penalty. The great majority of federal court decisions on the subject so hold. Huntington v. Attrill, 1892, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123; City of Atlanta v. Chattanooga Foundry & Pipeworks, 6 Cir., 1903, 127 F. 23, 64 L.R.A. 721, affirmed 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Strout v. United Shoe Machinery Co., D.C.Mass., 1912, 195 F. 313; Harvey v. Booth Fisheries Co. of Delaware, D.C.Wash., 1915, 228 F. 782; Hansen Packing Co. v. Swift & Co., D.C.N.Y.1939, 27 F.Supp. 364; Momand v. Twentieth-Century Fox Film Corp., D.C.Okl., 1941, 37 F.Supp. 649; Momand v. Universal Film Exchange, Inc., D.C.Mass., 1942, 43 F.Supp. 996; Winkler-

Koch Eng. Co. v. Universal Oil Products Co., D.C.N.Y., 1951, 100 F.Supp. 15; Wolf Sales Co. v. Wurlitzer, D.C.Colo., 1952, 105 F.Supp. 506. As stated in the leading case on the subject, City of Atlanta v. Chattanooga Foundry & Pipeworks, 6 Cir.. 1903, 127 F. 23, loc. cit. 29:

"The remedy is not given to the public, for no one may bring the action save the person 'who shall be injured,' etc., and the recovery is for the sole benefit of the person so injured and suing. It is not reasonable to construe the remedy so conferred as a penal action, for that would be to add to the punishment by fine or imprisonment imposed by the other sections of the act an additional punishment by way of pecuniary penalty. The plain intent is to compensate the person injured. True, the compensation is to be three times the damage sustained. But this enlargement of compensation is not enough to constitute the action a penal action * * *."

And in the most recent case of Florida Wholesale Drug, Inc. v. Ronson Art Metal Works, Inc., D.C.N.J., 1953, 110 F.Supp. 573, loc. cit. 577, the Court stated:

"Again, while the decisions throughout the United States differ on the point in question, because both of the differing State statutes and the differing viewpoints on them of the different State courts, the great weight of authority is to the effect that the treble damage provision of the Clayton Act is not penal, and that a State statute of limitations covering penal actions is therefore inapplicable. Such has been the construction of the courts as to the statutes of California, Kansas, Montana, New York, Oklahoma, Utah and Ohio. To the contrary, Illinois stands almost alone in its extremely broad construction of this somewhat uncertain term 'penal' or 'penalty'."

While the Judge in the last-quoted case subscribes to the school of thought that the nature of a federal anti-trust action is to be determined by the Supreme Court of the State whose statute of limitations is applicable (a philosophy we cannot follow)

nevertheless, his opinion clearly indicates the trend of federal authority on the non-penal character of such actions.

 Concluding, as we do, that a private Sherman Act case is an "action upon a liability created by statute" remedial and compensatory in character and not one for a statutory "penalty or forfeiture," we believe that the Kansas 3-year statute of limitation should be applied to such actions when the cause of action accrues in that State and there is a "borrowing statute" in the *lex fori*, as here. The damages here sought are for a continuing period, up to and including the date of the filing of this instant action. As a consequence, plaintiff here, at the very minimum, can upon proper proof being made recover damages for proven Sherman Act violations from at least July 15, 1949.

The instant action was commenced on *July 15, 1952*. Plaintiff alleges therein that "since at least 1935 to the present time" it has sustained damages as a result of the conspiracy charged, and seeks recovery for all such alleged damages during that period. Whether it may do so depends upon the Clayton Act tolling provision, supra, which provides as follows:

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

Since the violations of the Sherman Act, supra, for which instant recovery is sought, allegedly continued up to the time this action was filed, the operative effect of any state statute of limitations is important for the purpose of determining the date of plaintiff's earliest recoverable damages. What further damages plaintiff can recover, beyond any state statute limitation period, depends upon proof of defendants' alleged infractions of the Sherman Act, and the effect of the Clayton Act tolling provision.

On July 20, 1938, the United States instituted an equity suit in the United States District Court for the Southern District of New York, charging anti-trust violations to have been committed by all of the defendants involved in the instant action, except defendant Fox Midwest Theatres, Inc., which was not made a party to that Government action. See United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323; 70 F.Supp. 53; 85 F.Supp. 881; 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; Loew's Inc. v. United States, 339 U.S. 974, 70 S.Ct. 1031, 94 L.Ed. 1380; Id. 340 U.S. 857, 71 S.Ct. 69, 95 L.Ed. 627. Concededly, the earliest possible decree handed down as against any defendant in that Government action, momentarily ignoring subsequent appeals and reconsideration, was not made until November 8, 1948. Looking to the Paramount case, we find the decrees therein to have been rendered as follows: (1) consent decree on November 8, 1948, as against RKO Radio Pictures, Inc.; (2) consent decree on March 3, 1949, as against Paramount Film Distributing Corporation; (3) judgment on February 8, 1950, as against Universal Film Exchanges, Inc., United Artists Corporation, and Columbia Pictures Corporation, the time for appealing therefrom expiring on April 8, 1950; (4) judgment on February 8, 1950, as against Twentieth Century-Fox Film Corporation, Loew's Incorporated, and Warner Bros. Pictures Distributing Corporation, the appeal therefrom being disposed of by the United States Supreme Court on October 16, 1950.

 Although the dates of the various decrees in the Paramount case are of importance, we do not believe they are necessarily the sole criteria by which we must determine when the Paramount case ceased to be "pending" as against eight of the nine defendants served with process herein. (National Theatres Corporation, joined as a party defendant, has not been served with process and is not presently before the Court.) Even though a decree may be issued in an anti-trust suit, the Court may still retain jurisdiction over the

parties for the purpose of punishing them for subsequent violations of the decree, as well as for the purpose of granting further relief. Don George, Inc. v. Paramount Pictures, Inc., D.C.La., 1952, 111 F.Supp. 458. In fact, it has been brought to this Court's attention that further decrees have been made in the Paramount case as late as February 7, 1952. It is perhaps also noteworthy that the Court of Appeals for the Eighth Circuit has held that a consent decree reserving to the United States the right at the end of three years to seek final relief does not result in terminating the pendency of the action. Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 1952, 194 F.2d 846. Since consent decrees have been entered in the Paramount case as against two of the defendants in this action, RKO and Paramount, we think testimony should be proffered on the nature of those decrees, as well as on the current status of the Paramount litigation from an enforcement standpoint. Only then can this Court render an informed opinion on the question of pendency and its complementary influence on the tolling provision of the Clayton Act. Thus, as to the defendants RKO and Paramount, we shall defer determining the chronological extent of plaintiff's recovery herein of damages as against those two defendants beyond the 3-year period of limitation as above determined.

■ It is, however, true that an action ceases to be "pending" when a final decree is either disposed of on appeal, or, if no appeal is taken, when the time for appeal has expired. It was so held with reference to the Paramount case. Twentieth Century-Fox Film Corp., v. Brookside Theatre Corp., supra. As to defendants Fox, Loew's, and Warner Bros., the Paramount case thus ceased to be pending on October 16, 1950, the date of the last Supreme Court opinion in the case. As to the defendants who did not appeal from the adverse judgment in the Paramount case, Universal, United Artists and Columbia, the Government action ceased to be pending on April 8, 1950, the date their right of appeal expired. Therefore, as to these six defend-

ants, it is apparent that the Kansas 3-year statute of limitation being applicable, plaintiff can, upon sustaining its burden of proof, recover damages herein from at least since July 20, 1938, as against those six defendants.

■ We proceed to calculate for what period of time prior to July 20, 1938, plaintiff might be able to recover damages. Plaintiff brought this action against defendants exactly one year, two hundred and forty days after the United States Supreme Court handed down its opinion of October 16, 1950. It was the date of this Supreme Court opinion which marked the end of the pendency of the Paramount case as against Fox, Loew's and Warner Bros. In view of the tolling provision of the Clayton Act, it is the opinion of the Court that plaintiff could properly pray for damages which it might prove it sustained at the hands of these three defendants during the one year and one hundred twenty-five day period immediately prior to the institution of the Paramount case on July 20, 1938. Since the statute of limitations was tolled during the pendency of the Paramount case, this one year and one hundred twenty-five day period, when added to the period which expired from the time the Paramount case ceased to be pending to the date the instant action was filed, would fall within the 3-year limitation prescribed by the Kansas statute. For reasons already noted, plaintiff may also recover from these three defendants proven damages sustained from the time the Paramount case was instituted to the time the present action was filed.

■ As to defendants Universal, United Artists and Columbia, the Paramount case ceased to be pending on April 8, 1950 (the date their right of appeal expired), or exactly two years and sixty-seven days before the instant action was filed. By virtue of the same reasoning used immediately supra, plaintiff may properly plead and recover damages sustained as a consequence of the alleged participation by United Artists and Paramount in the conspiracy charged during a two hundred ninety-eight day period immediately prior to the filing of the Par-

amount case, as well as those allegedly sustained from July 20, 1938, forward.

█ As to defendant Fox Midwest Theatres, Inc., we do not believe the Kansas statute of limitations was ever suspended because of the pendency of the Paramount case. This conclusion is based on the fact that Fox Midwest Theatres, though perhaps an affiliate of Twentieth Century-Fox Film Corporation, was never itself a named defendant in the Paramount case. This precise question was ruled on in Christensen v. Paramount Pictures, Inc., D.C.Utah, 1950, 95 F.Supp. 446, loc. cit. 455, where the Court stated:

"Counsel argues, since Congress did not mention the word 'defendant' in the second paragraph [of the Clayton Act tolling provision], all that it is necessary to find is that in United States v. Paramount Pictures, Inc. the government complained of the activities of the wholly owned subsidiary, though it was not a named defendant, and that those activities are the same as those of which the plaintiff complains in this action.

"The language under construction in the second paragraph is 'based in whole or in part on any matter complained of in said suit or proceeding'. Counsel for defendants * * * contends that the foregoing language 'any matter complained of' means acts of the named defendants of which the government complains.

"This court is of the opinion that the plain and ordinary meaning of the language referred to is that contended for by defendant * * *.

"When Congress used the words 'any matter complained of' it referred to acts of the named defendants of which the government might complain in any suit or proceeding.

"The injunction [in the government as distinguished from this civil suit] binds those agents and subsidiaries as it does the parent company, but that is quite a different thing than to suggest that the tolling statute in Section 5 of the Clayton Act was intended to suspend the operation of the statute of limitations against a corporation not named as a party to the government's suit."

Plaintiff thus being in no position to avail itself of the Clayton Act tolling provision as against defendant Fox Midwest Theatres, Inc., its recovery of damages herein, as against that defendant, cannot be allowed for a period earlier than July 15, 1949, i. e., no earlier than three years prior to the bringing of the instant action.

In concluding this opinion, the Court concedes the closeness of many of the contentions raised by able counsel for both plaintiff and defendants. However, we are convinced that the foregoing method of disposal of the issue of limitation here raised is correct and serves a dual purpose. First, it will facilitate the granting of just and full relief to a party allegedly injured as a consequence of Sherman Act violations, providing proof of the violations and damages so charged can be made. Secondly, it preserves the integrity and authority of the federal judiciary in the determination of questions exclusively federal in character. Having thus disposed of this fundamental but most vital issue of the statute of limitations, the door is now open for further, and orderly, disposition of this cause.

Counsel are directed to present an order in conformity with the foregoing opinion. Proof on certain aspects of the limitation question reserved as above will be resolved at pretrial conference.

It is so ordered.