**D.D. JACOBS, Mildred Schmutte and Coleman Stone, Appellants,**

v.

**W.R. SELLERS, Independent Executor of the Estate of Virginia A. Newton, Deceased, et al., Appellees.**

No. 09–89–194 CV.

Court of Appeals of Texas, Beaumont.

Sept. 13, 1990.
Rehearing Denied Oct. 4, 1990.

Don Stocking, Stocking & Knez, Conroe, Robert W. Eutsler, Eutsler & Price, Houston, Gerald J. Creighton, Conroe, Rhonda H. Brink, Clark, Thomas, Winters & Newton, Austin, Burgain G. Hayes, Clark, Thomas, Winters & Newton, Austin, Deneina L. Turner, Conroe, Pat L. Langevin, Shreveport, Mary Joe Carroll, Clark, Thomas, Winters & Newton, Austin.

## OPINION

BROOKSHIRE, Justice.

Appeal involving the proper judicial partial construction of a last will and testament. The basic issue presented concerns which properties in the estate of the decedent, Virginia A. Newton, are proportionately burdened by, and obligated to share in, the payment of debts, administration expenses and taxes.

W.R. Sellers qualified as the Independent Executor of the Estate of Virginia A. Newton, Deceased. Aligned with him in this appeal are Melba Kahn, Bernard Kahn, Virginia Ann Kahn and W.B. Kahn. The Kahns are beneficiaries under the will of the decedent. Don Stocking qualified as an attorney ad litem for certain minor beneficiaries under the will.

The Appellees, at the threshold, invoke the provisions of TEX.R.APP.P. 74(f). The Appellees challenge the Appellants' statement of the case. The Appellees present the procedural posture of the appeal in this manner: that a single issue of will construction was presented below; that a summary judgment was granted below; and that the issue here presented was severed out effectively from a case involving the general construction of the will. The suit for the general construction of the will was initiated by the independent executor.

The Appellants herein are beneficiaries under the will. The Appellants characterize the proceedings below as certain petitions and motions for declaratory judgments to construe the will in question. Thereafter, certain motions for summary judgment were filed by the various parties. These parties included the Appellants, D.D. Jacobs, Mildred Schmutte and Coleman Stone, putting in issue the question of how the debts would be paid. These debts would include the estate taxes and expenses of administration.

The Appellants agree that there was an order correctly granting a severance of these issues. The Appellants characterize and complain of the order of the trial court to the effect that the debts and expenses be borne in a proportionate manner by all the properties and beneficiaries excepting, however, certain specific bequests. Appellants argue that the order below failed to provide that the income which was earned by certain assets during the course of the executorship be applied to the debts, taxes and costs of administration.

In submitting and arguing the partial construction of the will to the trial bench, all of the parties maintained that the will contained unambiguous, clear expressions of the true intentions of the testatrix with respect to their various positions. The Appellants herein maintain that the will places the debt and expenses burden on the devises as expressed and set out in paragraph IV(g) and paragraph VI(f) and (g) and that the law places the burden, first, on IV(g) assets and, secondly, the law places those burdens equally on VI(f) and (g) gifts.

Note that the Appellants maintain that the to-be-construed will places the debt and expenses burden on the devises as set out in paragraph IV(g). This paragraph reads:

"I hereby devise and bequeath unto my beloved daughter, Melba Kahn and my beloved son-in-law, Bernard Kahn, in equal shares, *all of the rest and residue of all of the personal property of which I may die seized and possessed,* including but not limited to cash on hand, stocks, bonds, automobiles, furniture, fixtures, and jewelry of whatever kind and character." (Emphasis added)

And paragraph number VI(f) and (g) which reads:

(f) "I hereby devise and bequeath unto my beloved daughter, Melba Kahn and my beloved son-in-law, Bernard Kahn, *in equal shares, an undivided fifty per cent (50%) interest in and to all of the*

*remaining real property of which I may die seized and possessed in whatever form* or character, whether the same be non-producing minerals, rural acreage, city lots, unimproved properties, or improved properties, but not limited thereto. (Emphasis added)

(g) I hereby devise and bequeath unto Martin W. Simonton and W.R. Sellers, Trustees *for the use and benefit of my beloved granddaughter, Virginia Ann Kahn, and my beloved grandson, W.B. Kahn, undivided fifty per cent (50%) interest, share and share alike, in and to all of the remaining real property of which I may die seized and possessed, in whatever form and character, whether the same be non-producing minerals, undeveloped acreage, city lots, unimproved properties, or improved properties, but not limited thereto, under the terms and conditions hereinafter set out.*" (Emphasis added)

An adverse position taken by other devisees was that the trial court had correctly construed the will that the debts and expenses were to be proportioned among all the beneficiaries based upon the relative value of the assets bequeathed to each beneficiary, excepting those, however, that are set out in paragraph V. Paragraph V reads as follows:

"It is my will and desire that the legacies (a) through (e) under paragraph IV above be delivered to the devisees thereunder as soon as may be practical after the date of my death."

Paragraph IV, (a) through (e), reads as follows:

"(a) I hereby devise and bequeath unto my beloved granddaughter, Virginia Ann Kahn, my diamond bracelet, my diamond watch, my deceased sister's diamond ring, all of my sterling silver, all of my china, all of my crystal, my fur stole, and my set of Stone Marten furs.

"(b) I hereby devise and bequeath unto my beloved grandson, W.B. Kahn, the four and one-half (4½) carat diamond formerly owned and worn by my deceased husband, W.F. Newton.

"(c) I hereby devise and bequeath unto my beloved sister, Mildred Schmutte, one of my fur coats and my diamond dinner ring.

"(d) I hereby devise and bequeath unto my good friend and nurse, Deneina L. Turner, the sum of Two Thousand Five Hundred and No/100 ($2,500.00) Dollars.

"(e) I hereby devise and bequeath unto my beloved daughter, Melba Kahn, one of my fur coats."

We conclude that it is clear that paragraphs II and IV of the will direct and mandate as follows:

"I direct that all of my just debts be paid out of my estate without delay by my Independent Executors to be hereinafter named."

Paragraph IV begins as follows:

"After the payment of my just debts, including but not limited to estate taxes and the cost of my burial and the fees incident to the probating of this, my Last Will and Testament ..."

We think such language makes plain that all of her just debts are to be paid without delay and that her just debts include, but are not limited to, estate taxes and the cost of her burial and certain fees.

However, in paragraph VIII, the testatrix also expresses her will and desires. Her will and desires were that all the taxes and debts be paid, *including the cost of the probation of her estate, or that satisfactory arrangements be made to pay all such debts and taxes.* Her further paramount will and desires were that no distribution be made until such time as those matters had been accomplished. *The testatrix further expressed her mandatory will and desire that her business enterprises be carried forward, during this period of time, "by my Independent Executors in consultation with, but not at the direction of the beneficiaries hereunder; and I do hereby authorize my Executors to make the necessary decisions and to carry them forward as may be required to accomplish the purposes expressed in this paragraph.*"

Paragraph VIII mandates as follows:

"It is my will and desire that the remainder of my estate after the payment of the specific legacies mentioned in (a) through (e) of paragraph IV be held and operated as an entity by my Executors until such time as the payment of all taxes and debts, including but not limited to the costs of the probation of my estate, or satisfactory arrangements be made to pay such debts and taxes, and that no distribution be made hereunder until such time as this has been accomplished. It is my further will and desire that my business enterprises be carried forward during this period of time by my Independent Executors in consultation with, but not at the direction of the beneficiaries hereunder; and I do hereby authorize my Executors to make the necessary decisions and to carry them forward as may be required to accomplish the purposes expressed in this paragraph."

■ We decide that, as a basic, sound, beginning point, we are constrained to adhere to the following dictats as set out in *Hurt v. Smith*, 744 S.W.2d 1 (Tex.1987), at page 4 by Supreme Court Chief Justice Hill:

"Texas law has long recognized that a testator's bequests can be divided into four categories: specific, demonstrative, general and residuary. *See, e.g., Sinnott v. Gidney*, 159 Tex. 366, 322 S.W.2d 507 (1959) (residuary); *Houston Land Trust Co. v. Campbell*, 105 S.W.2d 430 (Tex.Civ.App.—El Paso 1937, writ ref'd) (specific, demonstrative, general). Such classification depends upon the intent of the testator as shown by the entire will. *Lake v. Copeland*, 82 Tex. 464, 17 S.W. 786, 787 (1891). We hold that when classifying bequests in a will, we must consider the testator's intent by looking at the entire dispositive scheme rather than reaching an arbitrary determination based on ritualistic classification. It is necessary to determine, for each item bequeathed in the will, whether the testator intended the property to be disposed of as a specific asset, or merely as a portion of his general estate."

We think from the language of Chief Justice Hill that *such classifications depend upon the true intent of the testator, or testatrix, as shown by the entire will*. Further, we must be deeply cognizant that, in the classification of bequests in a will, we are constrained to consider the testator's true intent by looking at the entire dispositive scheme rather than reaching an arbitrary determination or classification based on some sort of a ritualistic procedure. *Lake v. Copeland*, 82 Tex. 464, 17 S.W. 786 (1891); *Hurt v. Smith, supra.*

The Supreme Court, in *Hurt v. Smith, supra,* wrote, at page 3:

"This Court has previously held that reference in a will to 'debts and expenses' included only *those owing by the testatrix at death, funeral expenses, and administration expenses. Stewart v. Selder*, 473 S.W.2d 3, 10 (Tex 1971). Such words are not to be construed as charging estate and inheritance taxes against the particular bequest. We hold that such a result is not changed by the insertion into a will of the language 'costs and expenses of probate'. Since the testator specifically mentioned estate taxes in Article IV, he could just as easily have specified in Article VI that the property passing to the charities should be charged with such taxes. No such provision exists, and although the question is not free from difficulty, we hold that the phrase 'just debts, funeral expenses, expenses of last illness, and costs and expenses incurred in the probate of this Will' does not include estate and inheritance taxes under the circumstances presented in this case. *See Stewart*, 473 S.W.2d at 10." (Emphasis added)

■ Appellants vigorously and correctly argue that the cardinal rule in construing a will mandates that the testatrix's intentions be ascertained by looking to the provision of the instrument, itself, as a whole as set forth within the four corners of the last will and testament. *See Stewart v. Selder*, 473 S.W.2d 3 (Tex.1971). Appellees basically agree.

This is a summary judgment case. This appeal is controlled by *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). We have carefully endeavored to apply TEX.R.CIV.P. 166a.

The trial bench, in its order, recited that *all of the parties at interest were before the court*. And, further, there was a uniform agreement *that the Will of Virginia A. Newton is unambiguous and subject to construction by the court as a matter of law*. The court then found that there was no genuine issue of any material fact and rendered in favor of W.R. Sellers, Independent Executor of the Estate of Virginia A. Newton, Deceased. The decretal part of the order reads:

> "ORDERED, ADJUDGED AND DECREED that it is the judgment and declaration of this Court, viewing the Will as a whole and considering Section VIII thereof, that the Testatrix, Virginia A. Newton, intended all of her estate (with the exception of specific legacies in Paragraphs (a) through (e) in Section IV) to bear proportionate shares of the estate taxes (including the Louisiana estate transfer tax and the Texas additional inheritance tax), expenses of administration and debts."

We have pondered this paragraph VIII. The testatrix directed that the remainder of her estate, after the payment of specific legacies, as set out in (a) through (e) of paragraph IV, be *"held and operated as an entity* by my Executors until such time as the payment of all taxes and debts ... costs of the probation of my estate, or satisfactory arrangements be made to pay such debts and taxes, *and that no distribution be made hereunder until such time as this has been accomplished."* She further clearly expressed that *it was her will that her business enterprises be carried forward during this period of time by her Independent Executors in consultation with, but not at the direction of the beneficiaries.* She also authorized her Executors to make the necessary decisions to carry forward the business enterprises as may be required to accomplish the purposes expressed in said paragraph VIII.

When Virginia A. Newton unequivocally expressed her will and desire that the entire remainder of her estate be held and operated as an entity until such time as the payment of all taxes and debts be accomplished and that no distribution be made thereunder until such time that those matters had been accomplished and when it was further expressed that it was her definite will and desire that her business enterprises (plural) be carried forward during that period of time by her independent executors, and, further, that: "I do hereby authorize my Executors to make the necessary decisions and to carry them forward as may be required to accomplish the purposes expressed in this paragraph"; then, we conclude that the trial judge's order was correct. The word "authorize" is defined as:

> "1a: to endorse, empower, justify, or permit by or as if by some recognized or proper authority ... 2 *obs.*: to vouch for: confirm the truth or reality of by alleging one's own or another's authority 3 *obs.*: to give legality or effective force to (a power, instrument or order) 4a: to endow with authority or effective legal power, warrant, or right: appoint, empower, or warrant regularly, legally, or officially...." MERRIAM–WEBSTER, INC., WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981)

> *"Authorize.* To empower, to give a right or authority to act. To endow with authority or effective legal power, warrant, or right. *People v. Young*, 100 Ill.App.2d 20, 241 N.E.2d 587, 589. To permit a thing to be done in the future. It has a mandatory effect or meaning, implying a direction to act.

> " 'Authorized' is sometimes construed as equivalent to 'permitted'; or 'directed' or to similar mandatory language. Possessed of authority; that is, possessed of legal or rightful power, the synonym of which is 'competency'. *Doherty v. Kansas City Star Co.*, 143 Kan. 802, 57 P.2d 43, 45." HENRY CAMPBELL BLACK, M.A., BLACK'S LAW DICTIONARY (Sixth Edition, 1990)."

It must be remembered that the will was made in February of 1979 and that Virginia Newton's death transpired a few months thereafter.

■ This appeal, being from the granting of a summary judgment, is governed by the *City of Houston, supra,* and TEX. R.CIV.P. 166a. Both parties had filed motions for summary judgment in the trial court. The trial court granted one summary judgment and denied the other. Therefore, the Appellants may attack the denial of their motion for summary judgment provided, however, that the Appellants have first successfully attacked and overturned the granting of the motion for summary judgment filed by the opposing Appellees. *CRA, Inc. v. Bullock,* 615 S.W.2d 175 (Tex. 1981).

The cardinal rule for construing a will mandates that the Testatrix's intent be ascertained by looking to the provisions of the instrument as a whole and as set forth within the four corners of the last will and testament. And the construing court shall effectuate that intent as far as legally possible. *Perfect Union Lodge v. InterFirst Bank of San Antonio,* 748 S.W.2d 218 (Tex.1988). When, in this severed proceeding, there are no disputed questions of fact the matter is a proper case for the application of the rule authorizing a summary judgment. The parties before us have conceded that the question involved is the construction of the last will and testament of Virginia A. Newton, deceased. We find that the language used by the Testatrix is clear, definite, unambiguous and mandatory. *See In re Estate of Boultinghouse,* 320 S.W.2d 409 (Tex.Civ.App.—El Paso 1959, writ ref'd). The fact that the writ was refused is of special, compelling significance.

Each of the important dispositive paragraphs, being paragraph IV and paragraph VI, open with identical clauses reading "[a]fter the payment of my just debts, including but not limited to estate taxes and the cost of my burial and the fees incident to the probating of this, my Last Will and Testament ...". Construing paragraph VIII with paragraphs IV and VI, we determine and hold that the trial judge's order was correct and that the Appellants have failed to show error in the trial court's order. Hence, we affirm the same.

■ We do not reach the point of error of Appellants' advancing their contentions that their denied motion for summary judgment should be granted by us. The Appellants have a final point of error arguing that all the income earned during the period of administration from the producing oil and gas properties belongs to the beneficiaries of the estate and cannot be used to pay debts. We perceive that this issue or question relating to the income earned from the producing oil and gas properties during the administration or executorship of the estate was simply not before the trial court in the severed summary judgment proceeding. Because of *City of Houston, supra,* we cannot properly entertain this final point of error. It is clear that TEX.CIV.PRAC. & REM.CODE ANN. sec. 37.005 (Vernon Supp.1990) authorizes the filing and pursuing of a declaratory judgment action on questions and issues involving the construction of last wills and testaments. Procedurally, however, this appeal is based upon a trial court's summary judgment entered in a narrow, limited, severed-out cause of action. The previous order of severance was referred to in the judgment appealed from. The order of severance and the judgment isolated for decision the sole issue as to which assets in the estate were subject to the payment of debts, estate taxes, and expenses of administration.

### The Agreed Order for Severance

An agreed order for severance was signed and entered by the trial court on April 24, 1989. The agreed order for severance was approved as to the form and substance by the parties and by their attorneys of record. The severance specifically provided that the "applicants", being Jacobs, Schmutte and Stone, had requested the court to construe the will with respect to the allocation of estate taxes, debts, and expenses of administration. Also, the order for severance recited that Sellers, as

**30**

Independent Executor, had filed his petition for declaratory judgment requesting the same issue of allocating the estate taxes, debts, and expenses of administration. All the parties then agreed to the resolution of this single issue stating that such resolution would facilitate settlement whereas any further delay would prejudice both sides.

Thus, it is clear that the only issue that was tried on the summary judgment motion below necessarily had to be the only issue on which the judgment of the trial court is based. We determine that the Appellants are not in a position to secure from this appellate court a decision on an issue or question which had not been decided by the trial judge. *City of Houston, supra.* In substance, a decision on appeal would result in an advisory opinion if we passed upon the Appellants' third point of error. The well-established rule is that the handing down of an advisory opinion is simply not a proper judicial function. *United Services Life Insurance Company v. Delaney,* 396 S.W.2d 855 (Tex.1965); *Alamo Express, Inc. v. Union City Transfer,* 158 Tex. 234, 309 S.W.2d 815 (1958).

In *United Services Life Insurance Company, supra,* the Texas Supreme Court wrote:

"Since the rendition of advisory opinions by courts is unauthorized by our constitution, it is undoubtedly sound law to say that the directive of a federal court could no more operate to vest this Court with jurisdiction to render an advisory opinion than it could empower this Court to try and determine a criminal case contrary to the peculiar provisions of the Texas Constitution which vest that jurisdiction in the Court of Criminal Appeals."

*Id.* at 863.

We overrule Appellants' third point of error. The summary judgment and order below are affirmed.

AFFIRMED.