CITY OF BROOK PARK, APPELLEE, *v.* AMERICARGO, INC., APPELLANT.

(No. 54794—Decided January 3, 1989.)

*David A. Lambros,* for appellee.
*Melvyn E. Resnick* and *Patrick J. Perotti,* for appellant.

DAVID T. MATIA, P.J. Defendant-appellant, Americargo, Inc., appeals from a judgment of the Berea Municipal Court, which found the appellant guilty of violating Brook Park Codified Ordinance Section ("B.P.O.") 335.05 — owner or operator of motor vehicle allowing another to drive.

The appellant is a corporation engaged in the business of providing shipping and delivery services within the municipality of Brook Park and the surrounding geographic area. This shipping and delivery is accomplished by way of truck and air transportation.

On October 8, 1986, Robert Vnuk, an employee of the appellant, was operating one of the appellant's trucks in the city of Brook Park. While attempting to turn onto Eastland Road, Vnuk was involved in a motor vehicle accident. Upon investigation of the accident by the Brook Park Police Department, it was. discovered that the driver's license of Vnuk had been previously suspended subject to the condition of occupational driving. However, it was later discovered that Vnuk had failed to comply with the requirement of providing and maintaining proof of financial responsibility as required by R.C. 4507.022, 4509.45 and 4509.46. Thus, Vnuk was in effect operating a motor vehicle while his driving privileges had been suspended.

On December 1, 1986, a summons was forwarded to the appellant for violation of B.P.O. 335.05. The cita-

tion, as attached to the summons, stated that:

"Said company, owner of above MV and under their control, did permit or authorize another person, whom [*sic*] has no legal right to operate MV while under suspension."

Upon waiver of trial before a jury by the appellant, a stipulation was entered into between the appellant and the plaintiff-appellee, city of Brook Park. This stipulation established that:

"1) Robert Vnuk was an employee of Americargo, Inc. on October 8, 1986.

"2) Robert Vnuk was driving a motor vehicle in furtherance of the business of Americargo, Inc. on that day.

"3) Robert Vnuk was driving at the direction of Americargo, Inc. and was authorized by the appropriate managerial agent of Americargo, Inc.

"4) The truck Robert Vnuk was driving was owned or controlled by Americargo, Inc.

"5) On October 8, 1986, Robert Vnuk was required to post financial responsibility insurance to have the legal right to drive and had not done so.

"6) The following documents are authentic and may be admitted [for the truth of the facts contained in them]:

"7) Robert Vnuk was covered by a policy of insurance with $1,000,000 in coverage by Nationwide by and through his employer Americargo.

"1) LEADS, dated October 8, 1986

"2) O'Hanlon Report, dated June 7, 1985

"3) Brook Park Traffic Accident Report No. 522-86

"4) Journal Entry in Case No. 86CVH77

"5) Certificate of Insurance and Declaration" (Bracketed material stricken in original.)

Both the appellant and the ap-pellee submitted briefs to the trial court in addition to the jointly entered stipulation. On June 9, 1987, the trial court, based upon the stipulation and the submitted briefs, found the appellant guilty of a violation of B.P.O. 335.05. Pursuant to the application of B.P.O. 501.11, a sentencing ordinance applicable to business organizations, the appellant was fined in the amount of $2,000.

On November 19, 1987, the appellant filed a motion for a delayed appeal with this court granting leave to file a delayed appeal on November 24, 1987.

I

The appellant's first assignment of error is that:

"The trial court erred since 335.05 B.P.O. is not a strict liability enactment."

This assignment of error is well-taken.

The appellant, in its first assignment of error, argues that a violation of B.P.O. 335.05 requires proof beyond a reasonable doubt of the culpable mental state of knowingly. Specifically, the appellant argues it was necessary for the appellee to prove at trial that the appellant had knowledge of Vnuk's operation of a motor vehicle while under suspension. The operation of a motor vehicle while under suspension is a violation of R.C. 4507.022 (formerly R.C. 4507.41).

B.P.O. 335.05, which is a verbatim adoption of R.C. 4507.33, states that:

"335.05 OWNER OR OPERATOR ALLOWING ANOTHER TO DRIVE.

"No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven by any person who has no legal right to do so or whose act of driving such vehicle would violate Ohio R.C. 4507.01 to 4507.39, inclusive. (ORC 4507.33)"

The question central to the application of the aforesaid ordinance involves the culpable mental state which attaches to "no person shall authorize or knowingly permit * * *."

Initially, we find that a distinction between "authorize" and "permit" amounts to a distinction without a difference. "Authorize" has been defined as:

"To empower; to give a right or authority to act. To endow with authority or effective legal power, warrant, or right. *People* v. *Young,* 100 Ill. App. 2d 20, 241 N.E. 2d 587, 589. To permit a thing to be done in the future. It has a mandatory effect or meaning, implying a direction to act.

" 'Authorized' is sometimes construed as equivalent to 'permitted'; or 'directed,' or to similar mandatory language. Possessed of authority; that is, possessed of legal or rightful power, the synonym of which is 'competency.' *Doherty* v. *Kansas City Star Co.,* 143 Kan. 802, 57 P. 2d 43, 45." Black's Law Dictionary (5 Ed. 1979) 122.

"Permit" has been defined as:

"To suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act." Black's Law Dictionary, *supra,* at 1026.

A comparison of these two definitions reveals that the net effect of "authorize" or "permit" is to allow or give power to a party to do an act or use a tangible or intangible object. Semantically, to "authorize" and to "permit" are identical.

In addition, we find that proof of the culpable mental state of knowingly is applicable to both "authorize" or "permit" as found in B.P.O. 335.05.

The Court of Appeals of New York in *People* v. *Shapiro* (1958), 4 N.Y. 2d 597, 176 N.Y. Supp. 2d 632, 152 N.E. 2d 65, reviewed a statute which was similar in sum and substance to B.P.O. 335.05. The statute reviewed by the court stated that:

" '4. Unlicensed operators or chauffeurs cannot drive motor vehicles. a. * * *; nor shall any person *knowingly authorize or permit* the operation or driving of a motor vehicle owned by him or in his charge upon a public highway of this state by any person who is not duly licensed under this chapter to so operate or drive a motor vehicle * * *.' (Emphasis supplied.)"

In *People* v. *Shapiro, supra,* the court held that a culpable mental state as found in a statute applies to the full body of the sentence in which it appears.

"In the present case, the People *failed to prove any facts* from which it might be reasonably inferred that the defendant knew that the driver of his automobile was not licensed to drive. That is a fatal defect in the People's case. In order to sustain a conviction for violating section 20 (subd. 4, par. a) of the Vehicle and Traffic Law, the specific wording of that statute— '*knowingly* authorize or permit the operation * * * of a motor vehicle owned by him or in his charge * * * by any person who is not duly licensed * * * to so operate * * * a motor vehicle' (emphasis added)—requires that the prosecution allege and prove some fact or circumstance from which it may be inferred that the owner of the automobile had knowledge that the one whom he allowed to operate his car was not duly licensed to drive. The word 'knowingly' does not simply modify the words 'authorize or permit' which immediately follow it, as suggested in the dissent, but modifies the full body of the sentence in which it appears. Penal statutes are to be strictly construed against the party seeking their enforcement and in favor of the person being proceeded against (see McKinney's Consol. Laws of N.Y., Book 1, Statutes, § 271). To hold that

the word 'knowingly' modifies only the words 'authorize or permit' would be to construe the statute liberally in favor of the People. This we may not do. No relevancy can be attached to the fact that our construction of the statute may make it difficult in some case to secure the punishment of persons actually guilty of violating section 20 (subd. 4, par. a) of the Vehicle and Traffic Law. The Legislature has defined the crime and it is not our function to alter the definition." *People* v. *Shapiro, supra,* at 601, 176 N.Y. Supp. 2d at 636, 152 N.E. 2d at 68.

We find this holding to be most persuasive.

Herein, B.P.O. 335.05 provides that "n[o] person shall authorize or knowingly permit * * *." The culpable mental state of knowingly must be applied to both the conduct of "authoriz-[ing]" and "permit[ting]" in that the net effect of "authorize" or "permit" is one and the same. Therefore, in order to establish a violation of B.P.O. 335.05, it is necessary to establish by proof beyond a reasonable doubt that the appellant had knowledge of the inability of its employee to legally operate a motor vehicle.

Applying this holding in the case *sub judice,* we find that the judgment of the trial court was premised upon a joint stipulation and submitted briefs. Based upon the joint stipulation and the submitted briefs, we hold that the evidence was insufficient to establish beyond a reasonable doubt that the appellant possessed knowledge of the inability of its employee, Vnuk, to legally operate a motor vehicle.

Thus, the appellant's first assignment of error is well-taken.

## II

The appellant's second assignment of error is that:

"The trial court erred since 335.05 B.P.O. was not violated in this case."

This assignment of error is not well-taken.

The appellant, in its second assignment of error, argues that B.P.O. 335.05 was not violated as a result of the existence of a policy of insurance which covered the appellant's employees. Specifically, the appellant argues that the existence of a policy of insurance which insured Vnuk while operating appellant's truck resulted in compliance with Ohio's financial responsibility law and allowed Vnuk to legally operate a motor vehicle.

R.C. 4507.022, which defines the ability of a person to operate a motor vehicle for purposes of occupational driving, provides that:

"Any person whose operator's or chauffeur's license or permit is suspended, or who is put on probation or granted limited or occupational driving, under section 4507.021 of the Revised Code, is not eligible to retain his license, or to have his license returned, until each of the following has occurred:

"(A) He successfully completes a course of remedial driving instruction approved by the director of highway safety. A minimum of twenty-five per cent of the number of hours of instruction included in the course shall be devoted to instruction on driver attitude.

"(B) He is examined in the manner provided for in section 4507.02 of the Revised Code, and found by the registrar of motor vehicles to be qualified to operate a motor vehicle;

"(C) He gives and maintains proof of financial responsibility, in accordance with section 4509.45 of the Revised Code."

Thus, a person may retain occupational driving privileges upon completion of a course of remedial driving, examination by the Registrar of Motor Vehicles, and proof of financial responsibility.

R.C. 4509.46, which defines "proof of financial responsibility," provides that:

"Proof of financial responsibility may be furnished by filing with the registrar of motor vehicles the written certificate of any insurance carrier authorized to do business in this state certifying *that there is in effect a motor vehicle liability policy for the benefit of the person* to furnish proof of financial responsibility. The certificate either shall state the expiration date of the policy, which date shall be not less than one year from the effective date of the certificate, or if no expiration date is stated in the certificate, then such policy shall not expire until canceled or terminated as provided in section 4509.57 of the Revised Code. The certificate shall also designate by explicit description or by appropriate reference all motor vehicles covered, unless the policy is issued to a person who is not the owner of a motor vehicle." (Emphasis added.)

However, the existence of a policy of insurance which covers a named party does not automatically result in compliance with R.C. 4507.022, 4509.45, and 4509.46.

"There can be no question as to the determination of legislative intent if the broad view presented by these and other financial responsibility sections is read carefully. The issuance of a policy covering liability of an owner or operator is one act, and the certification by the insurer of the necessary financial responsibility which a named person must provide is a separate and distinct act, although it may be incidental to the issuance of the liability policy." *Globe Mut. Cas. Co.* v. *Teague* (1967), 14 Ohio App. 2d 186, 192, 43 O.O. 2d 394, 397, 237 N.E. 2d 614, 618.

Herein, a review of the record shows that the appellant's employee, Vnuk, was indeed the beneficiary of a policy of insurance as issued by Nation-wide Insurance. Although the appellant's employee was the beneficiary of a policy of insurance, the record fails to reveal that a certificate of insurance was filed on behalf of the appellant's employee with the Registrar of Motor Vehicles pursuant to R.C. 4509.46.

As mandated by *Globe Mut. Cas. Co.* v. *Teague, supra,* the issuance of a policy of insurance and certification of a policy of insurance are two separate and distinct acts. The failure of the insurance company to provide a certification of the insurance policy covering the employee to the Registrar of Motor Vehicles resulted in the noncompliance of Vnuk with R.C. 4507.022 and prevented Vnuk from legally operating a motor vehicle under the terms of occupational driving.

It should be noted, however, that a certification of insurance filed with the Registrar of Motor Vehicles for the benefit of the employee would have allowed compliance of the employee with R.C. 4507.022 and 4509.45 and prevented the issuance of a citation to the appellant for the violation of B.P.O. 335.05.

Thus, based upon the non-filing of a certification of a policy of insurance with the Registrar of Motor Vehicles, the appellant's second assignment of error is not well-taken.

### III

The appellant's third assignment of error is that:

"The trial court erred in enhancing this penalty since 501.01 et seq., B.P.O. do not apply in traffic or licensing cases."

This assignment of error is not well-taken.

The appellant, in its third assignment of error, argues that the penalty imposed for violation of B.P.O. 335.05 could not be enhanced or increased through the application of B.P.O. 501.01, organizational criminal liabili-

ty. The appellant specifically argues that a traffic violation is not criminal in nature and prevents the application of the penalty provision of B.P.O. 501.01.

B.P.O. 501.01, titled organizational criminal liability, is patterned and adopted directly from R.C. 2901.23. The purpose of the aforesaid ordinance and statute is to provide for the attachment of criminal liability to an organization, corporation, partnership, or legal entity. This ordinance and statute provide for increased monetary penalties for violation of any ordinance or statute pursuant to R.C. 2929.31 on the basis that an organization cannot be jailed.

"Under the criminal code, an organization such as a corporation, partnership, or joint venture can be convicted of any offense under certain circumstances (See, section 2901.23). Since an organization cannot be jailed, this section provides a separate schedule of fines to be applied in such cases. If the section defining a particular offense does not follow the penalty scheme in the new criminal code, and plainly intends that the penalty stated in that section must apply, then such penalty must be used instead of the penalty in this section. Also, if any such section provides for a higher fine than in this section, the higher fine applies even though the section defining the offense does not plainly intend its penalty to apply to organizations. Fines for organizations are as follows: * * *" Committee Comment to H.B. No. 511 (R.C. 2929.31).

A violation of a municipal ordinance which regulates the operation of a motor vehicle is in fact a criminal violation. Cf. R.C. 2901.03; *McNary* v. *State* (1934), 128 Ohio St. 497, 191 N.E. 733; *Breaker* v. *State* (1921), 103 Ohio St. 670, 134 N.E. 479. Additional evidence of the criminality of a traffic violation involves the right to a trial by jury pursuant to Crim. R. 23, right to

bail pursuant to R.C. 2937.22 and Crim. R. 46, and the requirement that guilt must be established beyond a reasonable doubt.

Herein, Brook Park Codified Ordinance Section 335.05 is punishable by a maximum penalty of six months of incarceration and a fine of $1,000. Further, violation of this ordinance is classified as a misdemeanor of the first degree. Had the appellant been properly convicted of the violation of B.P.O. 335.05, the trial court would have been permitted to impose sentence based upon the application of B.P.O. 501.11.

Therefore, since a violation of a traffic ordinance is criminal in nature, the appellant's third assignment of error is not well-taken.

This cause is reversed and final judgment is entered for the appellant.

*Judgment reversed.*

DYKE and NAHRA, JJ., concur.