The STATE of Ohio

v.

**GOVER.**

2004-Ohio-1343.]

Hamilton County Municipal Court, Ohio.

No. C03 TRD 39136.

Decided Jan. 22, 2004.

Brian F. Leurck, for plaintiff.

Diego J. Padro III, for defendant.

---

ELIZABETH MATTINGLY, Judge.

{¶ 1} Defendant Taresa Gover is charged with violating R.C. 4507.33, wrongful entrustment, which states:

"No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven by any person if * * * (A) The offender knows or has reasonable cause to believe the other person has no legal right to drive the motor vehicle." [1]

{¶ 2} The facts in this matter are straightforward. On September 12, 2003, Sergeant Mark Denney of the Cheviot Police Department made a traffic stop of defendant's vehicle, which was at the time being driven by Reagan Sweat. When stopped, Sweat was on a direct route from the Hildebrandt Nursing Home to defendant's residence. When Officer Denney determined that Gover owned the car, both the officer and Gover testified that the officer called her at her employment. The woman who answered the telephone identified herself as Taresa Gover and confirmed that she owned the Honda that had been stopped by the officer. The officer testified that he then asked whether she knew where the vehicle was now and Gover stated that it was being driven by her boyfriend,

---

1. The statute in question was amended under S.B. No. 123 and recodified from R.C. 4507.33 to R.C. 4511.203 but does not change as it relates to the issues before this court.

Reagan Sweat, who had lived with her for two years.[2] The officer further testified that when asked, Gover stated that she knew that Sweat was driving under suspension but that she needed to get to work at the Hildebrandt Nursing Home. When the officer informed her that it was illegal to allow an unlicensed driver to operate one's vehicle, Gover reiterated that she knew that but had to get to work. At trial, defendant denied making these latter statements to the officer. Later that evening, defendant Gover came to the police station to be served with the ticket for this offense.

{¶ 3} The state offered no proof that Sweat's license was, in fact, under suspension with the exception of the statement made by defendant and the fact that when Officer Denney ran Sweat's license on the mobile data terminal in his police cruiser, the response indicated that Sweat was suspended.

{¶ 4} Defendant herein asserts in her defense that she cannot be found guilty of wrongful entrustment because the state presented no admissible evidence that Sweat was in fact, suspended, when Officer Denney stopped him. The state asserts in response that defendant's admission that she knew that Sweat was under suspension obviates the need for proof.

{¶ 5} While this statute, in one form or another, has been part of the law of Ohio since 1935,[3] there are relatively few cases interpreting it and none that addresses the specific issue raised by defendant of whether the state is required to prove as an element of the charge of wrongful entrustment that the driver did not have a legal right to drive at the time of the offense.

{¶ 6} Standard principles of statutory interpretation state that "where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413. Thus, to prove a violation of R.C. 4507.33, the state need only prove that (1) a person who owns or controls a motor vehicle, (2) permits another to drive said vehicle, (3) with knowledge or reasonable cause to know, (4) that the other's license is suspended.

{¶ 7} By its plain words, R.C. 4507.33 does not require the state to prove that the driver of the vehicle in question, did not, in fact, have the legal ability to drive.[4] Rather, the state's burden under R.C. 4507.33 is to prove,

---

2. She further testified that she had been going with him for three years.

3. A similar section first appeared in General Code 6296–28.

4. It seems highly unlikely that a person would even be charged with this offense if the driver of the vehicle was legally able to drive it.

beyond a reasonable doubt, that the defendant either knew or had reasonable cause to know that the driver to whom the car was entrusted had no legal right to drive the vehicle. Thus, the required mens rea is either knowingly or recklessly as stated in the "reasonable cause to believe" section of the statute. "Recklessly" requires only that the state demonstrate that the defendant acted with perverse disregard of a known risk.

{¶ 8} Thus, under the "reasonable cause to believe" section of the statute, a defendant can be found guilty of violating R.C. 4507.33 even if the driver in question was validly licensed. This could happen if the state proved that the defendant had reasonable cause to know that another's license was suspended even though, in actuality, it was not.

{¶ 9} Public policy supports this interpretation of R.C. 4507.33. The gravamen of this offense is that, with the requisite level of knowledge or mens rea, an unqualified driver is permitted by the defendant to drive his or her vehicle. This statute criminalizes the conduct of those who knowingly or recklessly aid or assist another to violate the licensing laws of this state. The clear goal of the section is to assure that only licensed drivers are driving on the state's highways, thereby minimizing the risk posed by such unlicensed drivers to the general public.

{¶ 10} A similar standard of culpability can be found in other Ohio statutes. For example, R.C. 2913.51 imposes criminal liability for knowing or having reasonable cause to believe that one is in receipt of stolen property. It is the defendant's reasonable belief, usually demonstrated by circumstantial evidence, that is at issue. It is not an element of this offense that the property actually be proven to be stolen. Moreover, cases actually decided under R.C. 4507.33 also support the notion that the state need not prove that the driver of vehicle was actually suspended to prove a violation of this statute.

{¶ 11} Thus, the Third Appellate District in *State v. Hickey* (Sept. 21, 1994), Union App. No. 14–94–1, 1994 WL 521182, in ruling on whether the trial judge had erred in overruling defense counsel's Crim.R. 29 motion for acquittal, noted:

> "Clearly, the only two elements to be proven by the prosecution are (1) the driver had authorization from the vehicle owner to drive the vehicle, and (2) the owner was not reasonably ignorant of the possibility that the driver was unlicensed to drive." Id. at * 2.

{¶ 12} More recently, while evaluating whether a police officer acted with probable cause when he pursued prosecution of defendant under R.C. 4507.33, the Eleventh Appellate District Court of Appeals in *Ryncarz v. Aurora*, No. 2001–P–0139, 2003-Ohio-6696, 2003 WL 22931353, noted:

> "The record clearly shows that appellant violated R.C. 4507.33, when he admitted to Officer Chambers, who wrote the admissions on the back of the

citation, that he owned the vehicle at issue, permitted * * * [his mother] * * * to drive his vehicle and knew that * * * [his mother] * * * had no legal right to drive his vehicle." Id. at ¶ 20.

{¶ 13} A few older cases are sometimes cited for the proposition that the state must prove that the driver did not have legal authority to operate the motor vehicle for the defendant to be convicted of a violation of R.C. 4507.33. However, it is noteworthy that *State v. Settles* (1990), 60 Ohio Misc.2d 9, 573 N.E.2d 231, interpreted a similar statute then in effect that required knowledge of the lack of a license to sustain a conviction of wrongful entrustment. The statute in question at the time did not allow conviction based on the defendant's "reasonable cause to believe" that the driver had no legal right to drive. The *Settles* decision is based on *Gulla v. Straus* (1950), 154 Ohio St. 193, 42 O.O. 261, 93 N.E.2d 662,[5] and *Brook Park v. Americargo, Inc.* (1989), 59 Ohio App.3d 23, 570 N.E.2d 290. Both of these older cases also involve interpretation of the cited statute, which has since been amended as previously cited to proscribe reckless as well as knowing conduct.[6]

{¶ 14} The court therefore finds that proof that the motor vehicle operator has no legal right to drive is not an element that must be proven to sustain a conviction under R.C. 4507.33. As a result, the prosecutor is not required to offer evidence of such suspension, especially when the defendant, as in this case, admitted knowledge that Sweat was not validly licensed.[7] Proof offered by the state or the defendant that the driver to whom the vehicle was entrusted was or was not validly licensed, however, might be circumstantial evidence of the defendant's knowledge or lack of knowledge.[8] The state is, of course, required to demonstrate that the defendant knew or had reasonable cause to believe that the driver had no legal right to drive the defendant's vehicle.

■ {¶ 15} Turning to the facts of this case, the court finds that Officer Denney was credible when he testified that defendant admitted that she permit-

5. Moreover, since *Gulla* involved the applicability of the doctrine of respondeat superior in a civil case, the requirements of that doctrine necessarily impact the interpretation the court in *Gulla* adopted.

6. The "reasonable cause to believe" language was inserted into R.C. 4507.33 as part of Sub.S.B. No. 275, 144 Laws of Ohio, Part I, 1630 (eff. Mar. 18, 1993).

7. The difficulty of proving violations of R.C. 4507.02 based only on defendant's statements is obvious. See, for example, *State v. Dunn* (June 4, 1999), Wood App. No. WD–98–054, 1999 WL 354506.

8. Whether the suspension or other disability was recently imposed or in place for several years may tend to support defendant's knowledge or demonstrate that the defendant was unlikely to know of the driver's lack of a valid license, for example.

ted Sweat to drive her car with the belief that he had no legal right to drive.[9] In addition, the circumstantial evidence in this case, to wit, that the defendant had lived with Sweat for two years,[10] that Sweat was pulled over while on a direct route between the nursing home where defendant worked and their mutual residence, and that defendant was, in fact, at work when the officer called her immediately following the stop, supports the officer's testimony.

{¶ 16} For the above-stated reasons, the court finds defendant Gover guilty of violating R.C. 4507.33.

{¶ 17} So ordered this 22nd day of January, 2004.

Judgment accordingly.

---

9. The reported cases decided under this section demonstrate that, generally, defendant's knowledge is proven by admissions of the defendant to police.

10. R.C. 4511.203, the amended version of R.C. 4507.33, which is effective January 1, 2004, makes the fact that defendant lives with the driver prima facie evidence of the required knowledge in certain circumstances.